Scribner, J.
The Toledo Consolidated Street Railway Company is a corporation created and organized under the laws of the State of Ohio, for the purpose, among other things, of acquiring, constructing, maintaining, extending and operating lines of street' railway in and along the streets of the city of Toledo, in the county of Lucas, Ohio. Its articles of incorporation, bearing date December 17, 1884, were filed with the Secretary ' of State of the State of Ohio, on the 18th day of December,. 1884. At the date last mentioned, several lines of street railway were being maintained and operated by different railway companies in the said city of Toledo, under grants and franchises derived from the common council of that city. About the 1st of January, 1885, certain of these companies consolidated their several lines of street railway, and for the purpose of such consolidation transferred to the said The Toledo Consolidated Street Railway Company all their said lines of street railway with the property and franchises thereunto appertaining.
On the 9th of November, 1885, the common council of the-city of Toledo passed an ordinance entitled “ An ordinance to- *367 grant The Toledo Consolidated Street Railway Company the right to reconstruct its tracks, and to extend its charter." Other ordinances have since been passed, conferring additional privileges upon this corporation. The privileges so conferred were to continue for the period of.twenty-five years from November 9th, 1882. The terms of the ordinance of that date were duly aecepted by The Consolidated Street Railway Company, and that company has ever since maintained and operated a system of street railway within said city of more than twenty-five miles in extent, in conformity with the requirements of the ordinances of said city.
The system of street railway so authorized, maintained and operated, embraces Adams, Summit, Monroe and Ottawa streets, and Broadway.
The Toledo Electric Street Railway Company is a corporation created and organized under the laws of the State of Ohio,, for the purpose, among other things, of acquiring, constructing, maintaining and operating lines of street railway, to be-operated by electricity or other motive power, on and along the streets and highways in the city of Toledo, Lucas county,. Ohio. The articles of incorporation bear date April 9, 1889, and were filed with the Secretary of State, April 10th,. 1889.
On the 26th of Juue, 1889, the said The Toledo Consolidated Street Railway Company filed its petition in the Court of Common Pleas of Lucas County against the said The Toledo Electric Street Railway Company, whereby it sought to enjoin the last named company from instituting and prosecuting threatened proceedings in the probate court of said county “to appropriate for the purpose of occupying and using the existing street railway tracks of this plaintiff (The Toledo Consolidated Street Railway Company), all the property of the plaintiff in each, every and all of the following streets and parts of streets in which plaintiff has its tracks constructed and is now maintaining and operating the same, to-wit: On Adams street' from Michigan street to Summit street j on Summit street,. *368 from Adams street to the Perry street bridge over Swan creek ; ■on Ottawa street, from the Perry street bridge over Swan •creek to Broadway; and on Broadway from Ottawa street to Morris street; and on Monroe street from Summit street to Eleventh street; and on Washington street from Eleventh street to Nineteenth street.” The petition gives a detailed statement of the various ordinances theretofore passed by the •common council of the city of Toledo relating to street railway companies, especially those under which the plaint iff derives its rights and franchises; its action thereunder; the consequences which would result from the use of its tracks by the •defendant company; and avers, among other things, as to the property which it is alleged the defendant threatens to appropriate as aforesaid, that “each and every part thereof is necessary for the use of this plaintiff in its said business of operating ■said system of railways, and in the discharge of its duty to the public and the city of Toledo as a common carrier of passengers for hire over and along the same, and is not necessary to the defendant in any manner or form.”
It further appears by the petition that the common council •of the city of Toledo, on the 27th of March, 1889, passed an •ordinance entitled “ An ordinance to grant David Robison, Jr., trustee, the right to construct and operate an electric street railroad on and, along certain streets in the city of Teledo”; ■and that on the 20th of December, 1889, the said common •council passed an ordinance entitled “ An ordinance to grant to David Robison, Jr., trustee, his successors or assigns, the right to construct and operate an extension of the electric street railroad heretofore authorized to be constructed by them on :and along certain streets in the city of Toledo.” The lines of street railway described in these ordinances include the portions of the consolidated system set forth in the petition, the •use of which, as the plaintiff avers, the defendant threatens to appropriate. Whatever rights or interests were conferred upon David Robison, Jr., by these ordinances, have been assigned to and are now held by the defendant.
*369 . The answer to this petition, filed by the Toledo Electric-Street Railway Company, June 30th, 1890, admits among:, other things, that it intends to “institute proceedings in the probate court of Lucas county, pursuant to law, to appropriate-sufficient interest in the street railway tracks of plaintiff to-enable this defendant to use and occupy the same in conjunction with the plaintiff, over and along the portion of the streets set forth in the petition, save and except that portion of Monroe street from Ontario street to Eleventh street, which part of said plaintiff’s tracks this defendant in no wise contemplates using or condemning.” Many other allegations of the petition were admitted; others were denied. A reply,, containing a general denial, was filed July 2d, 1890.
A preliminary injunction aá prayed, was granted on the filing of the petition in the court of common pleas by a judge of that court, to continue until the further order of the court. This injunction having been dissolved, and an appeal from the order of dissolution perfected, application was made-to two members of this court, at chambers, to suspend the order of dissolution. This application, after somewhat careful consideration of the questions presented, was, in July, 1890,. denied. Such further proceedings were had in the principal case that it came into this court by way of appeal from the judgment rendered therein by the court of common pleas dismissing the-petition.
On the 4th of January, 1892, there was filed in this court an amended and supplemental petition, to which the defendant answered January 25, 1892. A reply, in the form of a general denial, was filed February 24, 1892.
In the amended and supplemental petition many of the matters alleged in the original petition are set out without change, but in some particulars the pleader goes more fully into details, and states with more care and particularity facts ■ and conditions relied upon to support and maintain the position taken by the plaintiff, and he also brings to the attention of the court matters not mentioned in the original petition.. *370 By way of supplement it is shown that during the pendency of the action, proceedings in condemnation were instituted and prosecuted to final judgment by the defendant, in the probate court, under and in virtue of which, the defendant has been admitted to the joint use and occupancy equally with the plaintiff, of so much of the system ot railway tracks of the' plaintiff situate on Adam street, as lies between Michigan and Summit streets ; also of so much thereof as is situate on Summit Street, extending from Adams street to the Perry street bridge ; thence along and upon the Perry street bridge to Ottawa street; thence upon and along Ottawa street to Broadway; thence along and upon Broadway to Morris street; also along and upon Monroe street from Summit street to the westerly line of Ontario street. It is averred that the defendant under the authority and order of the probate court, and against the objection, and in violation of the rights of the plaintiff, has entered upon and is propelling its cars over and upon said tracks of the plaintiff, using electricity as a motive power. The plaintiff, among other things, prays that the defendant may be enjoined from occupying or using the tracks of the plaintiff; that the statute under which the defendant proceeded in the probate court may be declared unconstitutional and void, and its judgment and order rendered and made in said proceeding decreed to be null and void.
It is conceded that the compensation awarded by the jury in said appropriation proceedings has been paid into court, but it has never been accepted by the plaintiff.
The case was heard by us upon the pleadings and testimony, and was fully argued by counsel for the respective parties. Many questions were raised and points discussed, all of which have received careful consideration at our hands. We may not, in - disposing of the case, notice all these points, but it' must not be inferred therefrom that they have been over-' looked. To mention in detail, all the questions presented, would swell this opinion beyond reasonable limits, and impose upon us an unnecessary labor. We propose to notice, *371 however, what we regard as the leading and controlling questions arising in the case.
We come, then, directly to the principal question involved in this controversy : Is the defendant company empowered, under the constitution and laws' of Ohio, to appropriate the right to use jointly and equally with the plaintiff a portion of the street railway tracks of the plaintiff?
Let it be premised that whatever may be the views and opinions of the courts of other states, in Ohio it is well settled that under existing legislation power is not conferred upon municipal authorities to grant an exclusive right to any street railway company to use the streets of the municipality for railway purposes. Ohio ex rel. Attorney General v. The Cin. Gas Light & Coke Co., 18 Ohio St. 262; Cin. St. R. R. Co. v. Smith, 29 Ohio St. 291; Kinsman St. R. R. Co. v. Broadway etc., St. R. R. Co., 36 Ohio St. 239. Said Gilmore, J., in the case cited from 29 Ohio St. 308 : " The last clause of section 9 provides, 'that not more than one line of street railroad shall be granted upon the same street without the consent of the existing company/ This clause is contained in a proviso to the section; but by its terms' it would apply to companies existing at the time of its acceptance as well as to those created after the passage of the ordinance. This clause is clearly illegal, as it gives to private persons exclusive privileges in the use of the streets. The State v. The Cin. Gas Co., 18 Ohio St. 292.” " While we think it was not within the power of the municipal authorities,” said Mc-Ilvaine, C. J., in R. R. Co. v. R. R. Co., 36 Ohio St. 239, 250, “ by such agreement to confer upon the plaintiff the right to use these streets for railroad purposes, to the exclusion of all other persons or corporations, if the public welfare or’’convenience should require a further similar use ; we also think that no such exclusive right was intended to be conferred.” These observations are applicable, we think, to the present case. Not only was the council without power to grant the plaintiff exclusive privileges in the streets of the *372 city,, but the ordinances which confer upon the.plaintiff its-franchises and powers do not purport to confer an exclusive-right. .
: It is conceded that as between the railroad company and-' .the general public the latter may make reasonable use of that portion of the streets which is occupied by the tracks of the former. Upon this subject we quote the following language : “ It seems certain that such grants are not intended to exclude ordinary vehicles from using the rails longitudinally for the purpose of passage, or to exclude-ordinary vehicles from being so made or altered as to conform to the gauge of the tracks, so as to run the wheels of such carriages upon the tram of the rails. In some of the cities in other states the gauge of the street railways was originally fixed at such a width as to invite the ordinary travel in carriages into the same lines with the cars used by the company. And where the streets are of sufficient width to allow of two railway tracks,, and it becomes necessary to-allow a railway to occupy such street at all, it would unquestionably conduce very much to the quiet and good order of the travel in such street to invite all the travel, in each direction, into a single current upon each of the tracks of the railway, in the same direction as the cars pass. This is done-by force of city ordinances in some of the cities, and is found very useful; and in some of the states it is effected by special-statute.” Report of Mass. R’y Com. 1 Redfield on Railways,. 3d Ed. 634, 647, reproduced in vol. 3 of later editions..
As we understand the ruling of the Supreme Court in the case already cited from 36 Ohio St. 239, the city council, in. the-exercise of its discretion, and acting in good faith, may grant to one railway company, the right to use, to a limited-extent, the tracks of another company, due provision being-made for the payment of reasonable compensation for such-use. In that case, “ the plaintiff, a street railroad corporation, obtained from the city council of Cleveland the right to- . construct and operate its road through certain, streets of the- *373 city, upon certain terms and conditions expressed, and subject to such other terms and conditions as the council might thereafter prescribe. Among the conditions expressed it was stipulated that a certain other railroad company, then in existence, should be allowed to run its cars upon a portion ot the plaintiffs road, upon the payment of such reasonable compensation as the council should prescribe, if the parties were unable to agree. Afterwards another company was organized, to which was granted the right of way along certain streets, and also upon a portion of the route already occupied1 by the plaintiff, and ujion its track, upon the payment to the plaintiff of a reasonable compensation. These companies failing to agree upon the amount to be paid, the council prescribed a certain sum, which was tendered, but refused by the plaintiff. Thereupon the plaintiff brought suit against said other last mentioned company to enjojn said company from using any portion of its track, alleging, among other things, that the compensation so prescribed and tendered was inadequate, which allegation was negatived by defendant. Held, Í. That the plaintiff did not acquire an exclusive right to use the route upon which its road was constructed. 2. That the property of the plaintiff in its track was subject to be taken^ for a like public use in common, upon compensation being first made. 3. That the council stipulated for the right in such case, to prescribe a reasonable compensation. 4. That, without proof that the amount of compensation so prescribed and tendered was inadequate, the plaintiff is not entitled to an injunction.”
It is true that in the above case there were coupled with the grant to the first company certain terms and conditions, and that there was expressly reserved to the city council power to thereafter impose further conditions. But except in so far as-there was thereby reserved to the council the power to fix the compensation to be paid by the second company for the use of the tracks in common, we do not deem this material. The *374 power existed in the council, in the absence of any stipulation on the subject, to permit the second company to use the tracks of the first company. Ibid, p. 251. But where no power is reserved in the council, by the terms of the grant, to prescribe the amount of compensation, then this amount must be ascertained by a jury in the usual manner. “ In the absence of a stipulation to the contrary,” ’ say the court, “ it is quite clear to our minds, that the municipal authorities have no more power to fix the amount of compensation that should be paid by the latter to the former company for the right to the joint use of such material, than it has to determine the compensation to be paid to other owners of private property taken for the same public use.”
It follows from these views, that as each piece of timber was put in place, and each rail was .laid by the plaintiff company, or by the several companies to whose rights it has succeeded, in the construction of the system of railway now under consideration, these several companies were respectively charged, in law, with knowledge that the right of another company to use in common with them, upon due compensation being made, a portion of such railway system, might be granted by the council. Accepting their franchise subject to the exercise of this power, they cannot now be heard to complain that the council has acted accordingly.
It may be mentioned, also, in this connection, that upon such portions of the streets as are involved in this controversy, except Washington street, the council has required double tracks to be operated by both companies. Upon some of these streets, it is an absolute impossibility to maintain four distinct, lines of railway to be operated by two different companies, without utterly destroying the usefulness of such streets for the ordinary purposes of public highways. Under such circumstances, to prevent the second company fi’om using, to a reasonable extent, the tracks of the first company, would be to create a monopoly in the streets; and this the council is not permitted to do. Hence it is that by see. 2 of *375 the-ordinanee of March 27, 1889, before referred to, authority was “ granted to David Robison, jr., trustee, his successor or assigns, to occupy, according to law or ordinance, so much of existing street railroad tracks upon the above named streets as is necessary for the successful operation of said electric railroad thereon.”
While it is clear, in our judgment, that the city council may authorize one street railway company to run its cars upon and over the tracks of another company, subject to the limitations imposed by the constitution and the laws, it is equally clear that the council possesses no power to take from one company a portion of its tracks, or railway system, and hand it over, absolutely, to another company, to the exclusion' of the former; especially, would this be so where the portion sought to be taken constitutes the heart of the system. And it was for this reason that upon the hearing of the motion to suspend the order of dissolution before spoken of, we were of opinion that until the passage of the amendatory act now about to be considered, there was no statute in existence authorizing the defendant company to condemn the right to use any portion of the tracks of the plaintiff. While sec. 3438 of the Rev. Stat. limits the power of municipal authorities to authorize the occupancy or use by one company of the railway tracks or other structures of another company, it is not clear that the power to condemn is conferred by the statute as it formerly stood. Sec. 3440, before it was amended, provided, that “ when the council * * * make such grant, the company or person to whom the grant is made may appropriate any property necessary therefor, when the owner fails to expressly waive his claim to damages by reason of the construction and operation of the railway.” Taken literally, this language would have permitted the appropriation, absolutely, of any portion of the tracks or structures of an existing street railway company, subject, only, to the limitations contained in sec. 3438. We doubt if the legislature had in mind, in adopting sec. 3440, the condemnation by one street *376 railway company of the property of another. “ It is true,” said the court in T. & W. R’y Co. v. Daniels, 16 Ohio St. 390, 397, “that grants of this nature, being in derogation of private rights, must be strictly, construed. If, therefore, there is reasonable ground of doubt as to whether the legislature intended to grant thq continuing power claimed to be exercised here, the doubt should be resolved against the company, and it ■ must go back to the law-making power for a new grant.” See also The Iron R. R. Co. v. Ironton, 19 Ohio St. 299, 305; R. R. Co. v. Village of Belle Center, 48 Ohio St. 273.
In the case of Sims v. St. R. R. Co., 37 Ohio St. 556, 571, where the question of the power of one street railroad company to condemn the right to use in common the tracks of another company, was pressed upon the court, the court refused to determine it. “It is said,” remarked the judge delivering the opinion, “ that one street railroad corporation cannot condemn a right to use in common the track of another like corporation. This question is not properly before us. It can only arise Avhen the parties fail to agree and when proceedings are instituted for that purpose. It will then be a question between the two corporations. If such right does exist, the plaintiffs cannot complain, as the court finds its exercise will be highly beneficial to them. If it does not exist, the West Side Street Railroad Company can have ample protection, without the aid of the plaintiffs.”
But the amendment of sec. 3440, by the-Act of April 11, 1890, removes, as we think, the doubt above suggested. Power is thereby granted to “ appropriate any property necessary for the purpose of occupying and using under sec. 3438, any existing street railway track or tracks, subject to the limitations of said section, and for not more than one-eighth of the entire distance between the termini of the route as actually constructed, operated and run over, of the appropriating company, or person, at the time appropriation- proceedings are - begun.” 87 Ohio Laws, 178. This act is not entirely clear *377 in its terms, but we construe it, as we did on a former occasion, to confer only the right to appropriate for a joint use and occupation. See L. M. & Col. & X. R. R. Co. v. Dayton, 23 Ohio St. 510, 518; L. S. &. M. S. R’y Co. v. C. S. & C. R’y Co., 30 Ohio St. 604. See Iron R. R. Co. v. Ironton, 19 Ohio St. 299; R. R. Co. v. Village of Belle Center, 48 Ohio St. 273; Railway Company v. Telegraph Association, 48 Ohio St. 392, 433.
It is insisted, however, on the part of the plaintiff, that the. above mentioned act is unconstitutional; and in the amended petition the following reasons for this claim are stated:
First — It is in conflict with sec. 26, art. 2, of the Constitu-, tion of the State of Ohio, in that said act relates to the sovereign power of eminent domain, is of a general nature, and does not have a uniform operation throughout the state.
Second — Said act is further in conflict with sec. 1, art. 13; of the Constitution of Ohio, in that it purports to confer the power of appropriating any property necessary for the purpose of occupying and using existing street railway track or tracks, by a special act, upon any corporation which is authorized to construct and operate, and has constructed and is operating, a street railway in any city of the third grade of the first class.
Third. — That said act is in conflict with sec. l,.art. 13, of the Constitution of the state of Ohio, in that it is a special act conferring corporate powers.
Fourth — That said act is further in conflict with sec, 13, art. 1, of the Constitution, in that it purports to authorize and empower the appropriation of property already devoted to and in public use for street railway purposes, to the use of another person or corporation, to be used by such person or corporation for the same public purpose.
And said act contains no provision or limitation protecting the rights of the corporation owning said existing tracks, to operate the same to the extent that the same may be necessary for the business of such owners, or for the accommodation of *378 the people using the cars of said existing companies for compensation over said existing tracks, but confers (the power of appropriation of any property necessary to the use of said existing tracks by the appropriating company without reference to such rights.
The amendatory act, by its terms, applies only to a person or company “ which is authorized to construct and operate, and has constrticted and is operating, a street railway,” in any city of the third grade of the first class. It is the power to appropriate that is hereby granted, not the power to be a corporation. This power to appropriate is conferred upon individuals as well as upon corporations. The general corporate powers of the defendant, as well as those of the plaintiff, are derived from the general laws of the state, applicable to all localities alike, and are in no respect dependent upon the act of April 11, 1890. It is true that there is thereby conferred upon street railway companies operating lines of railway within cities of the third grade of the first class, a power not previously existing, viz., power to appropriate the right to use jointly and equally with other railway companies certain portions of the tracks and structures of the latter. But is the act in question a local act ? • The act of May 4, 1869 (66 Ohio Laws, 80), constituted the city of Cincinnati á railway corporation, and conferred upon it the power of eminent domain. (Sec. 7.) Another act of the same date (66 Ohio Laws, 83), granted like powers to the city of Toledo. In the case of Walker v. Cincinnati, 21 Ohio St. 14, the Supreme Court held these enactments valid and constitutional. Although the point is not noticed in the opinion of the court, it was, nevertheless, argued by counsel engaged in the case, as the report shows, that these acts were in violation of sec. 26, art. 2, of the constitution of the state (pp. 29 and 30). It does not appear from the report, however, that attention was called to sec. 1, of art. 13, of the’constitution, or that the court noticed the question arising under the provisions of that section. And this omission is mentioned in *379 the opinion of the majority of the court in the case of The State v. Pugh, 43 Ohio St. 98, 120.
In the argument before us much reliance was placed by counsel for the plaintiff upon the decision of the court in the case last referred to. The act of the legislature there in question was held to be in violation of sec. 1, of art. 13, of the constitution, for the reason that it conferred corporate powers upon the city of Columbus by special act. A majority of the court, upon a close and critical analysis of the provisions of the act, found that it could not, by any possibility, at any time, apply to any city other than Columbus. But the court said, referring to the plan or form of classification adopted in the statute now under consideration r “ It is now too late to question the validity of the plan of classification incorporated in our statutes, and which has received the repeated sanction of this court. State v. Brewster, 39 Ohio St. 653; McGill v. State, 34 Ohio St. 228; State v. Powers, 38 Ohio St. 54; Bronson v. Oberlin, 41 Ohio St. 476. It is not to be urged against legislation, general in form, concerning cities of a designated class and grade, that but one city in the state is within the particular classification at the time of its enactment.” (P. 112.) For further decisions upon this proposition, see the dissenting opinion of Okey, J., in the same case, p. 125.
In the case of State ex rel. v. The City of Toledo, 48 Ohio St. 112, an earnest and able effort was made by counsel to bring the act there in controversy within the doctrine declared by the Supreme Court in the case above referred to. (See pp. 119 and 120.) The same'form of classification was there adopted as in the act under consideration here. (See p. 113.) It was insisted by counsel for the defendant in that case that the act did not confer corporate powers. But the court, after reviewing at some length the question so presented, and various statutes bearing upon it, determined that the act was not special, but was general in its nature, (pp. 127-131.) See, also, Marmet v. The State, 45 Ohio St. 63.
*380 We have examined the various cases cited in behalf of the plaintiff, particularly the opinion of the Supreme Court in the recent case of Costello v. The Village of Wyoming, not yet appearing in the regular reports; also the syllabus, showing the points decided in the case of Ohi_ ex rel. v. Schwab, 27 Weekly Law Bull. 159; and while the Supreme Court has laid down in those cases some very wholesome rules in regal’d to special legislation, it has not, in our judgmeut, impaired in the least degree the doctrine declared by that court in the case of The State v. Pugh, 45 Ohio St. 112.
Counsel for the plaintiff point out a distinction between the .•statute of April 11, 1890, and the statutes which are made to apply to cities falling into a certain class under the terms of general acts classifying cities, and urge that this is not a law governing a municipality, but is one conferring powers upon such private corporations as may be operating street railways in a city of a certain class. While this is true in a certain sense, we think that the same or similar reasons which have been held sufficient to relieve statutes under the classification acts from the charge of unconstitutionality, would exempt this one also from that charge. The operations of a street railroad company are necessarily essentially local in their character, and affect local rights and interests, and the grants to such companies of tbe right- to use the streets are sustained on the grounds that such use is a public one, and such as must be held to have been legally contemplated when the land was acquired for the purpose of a public highway; and while the railway company may not be strictly a municipal agency for the accomplishment of municipal objects, yet it does accomplish public and municipal objects, and its right to use the streets is granted and controlled by the council; and when a statute gives to street railway companies certain powers only to be’ exercised in cities of a certain general class, we cannot say that it makes an arbitrary or unwarranted distinction or classification such as was held to vitiate the act reviewed in the case of Costello v. The Village of Wyoming.
*381 We hold, therefore, that the act of April 11, 1890, is a general and not a special act; that it is not in conflict with sec. 26 of art. 2, nor with sec. 1 of art. 13, of the constitution. The objection made to the validity of the act in specification four quoted above in the amended petition, we have already considered, and we regard it as not well taken.
The objection that the act contains no provision or limitation protecting the rights of the corporation owning the existing tracks, possesses much force. According to our view, power is not conferred to appropriate thq property of the corporation owning the tracks, in the ordinary sense of that term, but only power to appropriate the r’ight to the joint and equal use of such tracks or structures. This right, it is true, may be designated and regarded as property, but it may be exercised only during the existence of the franchise granted the company whose" tracks are subjected to such joint use. By statute this cannot exceed a term of 25 years, though it may be renewed by the council in the exercise of its discretion. Strictly, the company originally owning the tracks continues to be the owner. The only interest the appropriating company takes is the right to use jointly with the other company, for a limited period,- such portion of the tracks as are designated in the appropriation proceedings, to the extent authorized by the statute. As to the matter of rules and regulations, these may in part be provided by the council, in the exercise of the police power for the protection of the public. So far as the rights of the two companies are concerned, inter se, it is, in our judgment, within the power and jurisdiction of a court of equity to provide suitable protection to each, against the invasion of its rights by the other eompany.
Testimony was introduced tending to show that the use of the tracks of the plaintiff company by cars of the defendant, propelled by electricity, would cause the speedy destruction of such tracks. This is a matter to be presented and- considered upon the inquiry before the jury in the probate court as to the proper compensation to be awarded for the use of the *382 plaintiff’s tracks. It furnishes no sufficient ground for an injunction restraining the defendant from instituting and prosecuting proper proceedings in appropriation. It does not appear that rails adapted to electric car service, are not suitable for horse car service. The increased expenditure required by the change should be borne by the appropriating company.
The petition is dismissed.
We come now to the consideration of the petition in error. This is a proceeding in which we are asked to reverse the judgment of the Court of Common Pleas of Lucas Couuty, affirming the order or judgment ofthe probate court of said county, confirming the verdict of the jury rendered in an appropriation proceeding brought and prosecuted in the probate court by the defendant in error, The Toledo Electric Street Railway Company.
The proceedings to appropriate were commenced August 12, 1890, by the filing of the application in the probate court. The present plaintiff in error, and The Metropolitan Trust Com-pan, The Adams Street Railway Company, and Mars Nearing, trustee, were made defendants. The substantial controversy, however, arises upon the conflicting claims of the plaintiff in error and the Toledo Electric Street Railway Company.
The last named company sought by its said proceeding in the probate court to “appropriate to its use jointly with the said The Toledo Consolidated Street Railway Company the right, equally with said defendant, The Toledo Consolidated Street Railway Company, to use and occupy and run its cars over and upon so much of the defendant’s existing street railway tracks, switches, turn-overs and turn-outs in Adams street as are placed, constructed and operated by defendant in said street, from Michigan Street to Summit Street in said city of Toledo. The said double tracks, switches, turn-overs and turn-outs now placed, constructed, and used in said street *383 being the property of the said defendant, The Toledo Consolidated Street Railway Company.”
Upon the preliminary hearing before the probate court a finding was entered in favor of the defendant in error. Divers exceptions were taken by the plaintiff in error during the progress of this hearing, to certain rulings made by the probate court. A motion for a new trial was also made by the plaintiff in error upon the conclusion of the preliminary hearing and the announcement by the court of its finding. This motion was overruled. A bill of exceptions was thereupon taken by the plaintiff in error, embodying all the testimony given upon such hearing, and exceptions taken during its progress. This bill is made part of the record. Upon the conclusion of the foregoing proceedings a jury was summoned, empanelled and sworn, as required by the statute, to hear testimony and ascertain and award to the plaintiff in error the compensation to be paid by the appropriating company for the property or right sought to be appropriated. This trial or hearing was conducted to its final termination, and a verdict rendered by the jury. A motion fora new trial was made by the appropriating company, which was overruled. A bill of exceptions was taken by the plaintiff in error, containing all the evidence introduced on the trial before the jury, and showing exceptions taken during the trial to certain rulings of the court in admitting and rejecting testimony, and also in its charge to the jury. This bill of exceptions is made part of the record.
The verdict of the jury was rendered December 4, 1890. The order or judgment of confirmation was entered December 31,1890. The plaintiff in error filed its petition in error in the court of common pleas to reverse the foregoing order and judgment of the probat'e court, January 28, 1891, before the amount of the compensation awarded by the jury had been paid in by the appropriating company. The judgment of the probate court was affirmed by the court of common pleas at its April term, 1891.
*384 1. We are met at the outset with an objection from the defendant in error, that the petition in error was prematurely filed, no such final judgment having been rendered, as is claimed, at the date of the filing thereof, as is the subject-matter of review upon proceedings in error. This objection is based npon the fact that at the date of the filing of the petition in error, the amount of the verdict had not been paid in, and there was consequently no final judgment ordering the appropriating company to be placed in possession. In considering this objection we have consulted the following statutes and authorities : Act of April 30, 1852, secs. 9 and 11; 1 S. &.C. 314, 315; secs. 107, 109; Act of April 23, 1872; 69 O. L. 88, especially sec. 10; Amendatory Act of April 19, 1873, 70 0. L. 146; Rev. Stat. Ohio, secs. 6422-6438 ; Meily v. Zurmehly, 23 Ohio St. 627 ; R. R. Co. v. Patrick, 7 Ohio St. 170 ; State v. R. R. Co., 17 Ohio St., 103; Bothe v. R. R. Co., 37 Ohio St. 147; Wagner v. Ry. Co., 38 Ohio St. 32; Railroad Co. v. Barcalow, 4 C. C. R. 49. The question is attended with considerable difficulty, but upon a very careful examination of the statutes, and the decisions of the Ohio courts, we are content to abide by the views expressed by the majority of the court in the case last cited. We hold, therefore, that the order of the probate court of December 31, 1890, is such a final order as comes within the statute, and that the petition in error was not prematurely filed.
2. It is also insisted by counsel for the defendant in error, that the action and finding of the probate court upon the preliminary hearing cannot be reviewed upon petition in error. Rev. Stat., secs. 6437-8.
In the case of Railway Co. v. Railway Co., determined in March, 1890, this court had occasion to enter upon a full and careful examination of the statutes providing for and regulating proceedings in approprition, and various other statutory provisions bearing upon the question now presented. And, adhering to the conclusion there reached, we are of opinion, and so hold, that after final judgment has been en *385 tered, confirming the verdict of the jury, a petition in error may be filed by the party whose property is sought to be taken, in which the action of the probate court, upon the preliminary hearing, may be reviewed.
3. Some of the questions raised by the plaintiffs in error on the hearing before the probate court, particularly those relating to the constitutionality of the act of April 11, 1890, have been considered and disposed of in the foregoing opinion; other questions arising upon the record will now be noticed.
4. There was attached to the petition to appropriate, as an exhibit, a copy of the ordinance of November 9, 1885, referred to in the foregoing opinion, under which the plaintiff in error claims; also a copy of the ordinance of March 27, 1889, granting to David Robinson, Jr,, trustee, and his assigns, certain rights and privileges, under which the defendant in error claims; also, a copy of the ordinance of July 28, 1890, granting to the defendant in error certain rights and privileges as set forth in said ordinance. As to the two last named ordinances it was objected on the hearing in the probate court that they could not be regarded as parts of the petition, and should be stricken off. The court overruled the objection, and treated these ordinances as part of the petition. While we are clear that in ordinary proceedings in the court of common pleas this objection should have prevailed, we are in doubt as to whether the rules of code pleading are applicable in a case of this character, and are not willing to disturb the judgment of the probate court upon this ground. From this view it results that the ordinances referred to are to be regarded as being incorporated with and forming part of the petition to condemn.
5. Various objections were taken to the petition to condemn, in the form of motions to dismiss, to strike out certain portions, and to make more definite and certain, all of which were overruled. A demurrer to the petition was also overruled. The objections so made were grounded largely upon *386 the claim that there was no valid statute in force authorizing the appropriation; that the petition did not set forth with sufficient fullness and particularity the facts necessary to entitle the appropriating company to exercise the power of eminent domain; that it did not show the nature and character of the electrical appliances intended to be used by the appropriating company; nor furnish sufficient data to enable the jury to pass intelligently upon the question as to the amount of compensation that should be awarded.
As before stated, the constitutional questions involved are considered and disposed of above. As to the other objections urged against the petition, we can only say here that we have read very carefully that document and the exhibits attached forming part thereof, and are of opinion that the objections urged are not well taken. To us it seems that in preparing this petition all the requirements of the law have been substantially complied with. Rev. Stat., see. 6416. Many of the matters which it is suggested should be contained in the petition, may, under its allegations, be supplied by the evidence given on the trial.
6. It appeared upon the bearing that the ordinance of March 27, 1889, and that of July 28, 1890, copies of which are attached to the petition, were never in fact signed by the presiding officers of the two branches of the council. The names of these officers were signed thereto before publication by the city clerk, in conformity with a custom and practice of long standing. It was objected that by reason of this omission, and for many other causes suggested upon the hearing, the ordinances were invalid; that the clerk had no authority to record them, and that the record book in which they had been recorded was not, as to these oi’dinances, competent evidence. The journals of both branches of the council, showing the due passage of the two ordinances, were offered and received in evidence. The court overruled the objections of counsel for plaintiff in error, and permitted the record of the ordinances *387 to be given in evidence. It is now insisted that in this particular tbe court erred. We think that the court committed no error in receiving this evidence. Rev. Stat., secs. 1693, 1699; Blanchard v. Bissell, 11 Ohio St. 96, 102-3; Chase, adm’r v. Hunter, Treas., decided at the present term of this court. Certain of the objections made to this evidence have already been considered; others will be noticed as we proceed.
7. It was also insisted upon the hearing by counsel for plaintiff in error, that it was essential to the case of the appropriating company to prove that the proper application to the council for its franchise had been made, and notice thereof given, and that the consents of owners of abutting property had been obtained, as required by the statute. Revised Statutes, sections 2501, 2502, 3439; Roberts v. Easton, 19 Ohio St. 78. This proposition was denied by the court. There was given in evidence the application made to the council for the franchise granted by the ordinance of March 27, 1889, and thereupon the plaintiff in error offered to prove that the requisite consents had not in fact been obtained. This evidence was rejected, and the plaintiff in error excepted. We think that the court committed no error in these rulings. It was not competent for the plaintiff in error to go into the inquiry proposed. It was a matter with which it had no concern. Owners of abutting property might object, but not the owners of a franchise to maintain and operate a line of street railway. See Simmons v. Toledo, 5 O. C. C. R 124, 145-6. In a later case, unreported, it was held by this court that a property owner upon one street could not be heard to complain that the necessary consents of property owners upon another street occupied by the same line of railway, had not been obtained. And see Sims v. St. R. R. Co., 37 Ohio St. 556.
8. In the application to appropriate it was alleged, and by the testimony given on the hearing it was shown, that at the time of the filing of the application the defendant in error had constructed and was operating within the city of Toledo, a line *388 of electric street railway of sufficient extent to entitle it, under the act of April 11th, 1890, to condemn the right to occupy and use that portion of the railway tracks of plaintiff in error situated upon Adams street, between Michigan and Summit streets, described in the petition. In this estimate we treat the double tracks situated between the points named as constituting practically, for the purposes of this inquiry, but one track. But is was objected‘that neither by the pleadings, nor by the proofs did it appear that’the appropriating company had ever obtained the authority of the council, or any authority whatever, to construct or operate that portion of the line known as the Belt Line proper; namely, that portion extending from Vermont avenue upon Bancroft street to Lawrence avenue, thence along Lawrence avenue to Bartlett street; thence to Nettie street and along Nettie and Washington streets to Ontario street; thence upon Ontario street to Monroe street. If we exclude from the computation this portion of the line, the proof fails to show that the defendant in error has brought itself within the statute entitling it to condemn 'as proposed. But should this portion be excluded? The question is not free from doubt. Inasmuch, however, as the appropriating company has brought itself within the terms of the statute, and has made it appear from the testimony that it “ is authorized to construct and operate, and has constructed and is operating, a street railway,” it may appropriate “ for the purpose of occupying and using, under section 3438, any existing street railway track or tracks, subject to. the limitations of said section, and for not more than one-eighth of the entire distance between the termini of the route as actually constructed, operated and run over, of the appropriating company or person at the time appropriation proceedings are begun” and we conclude that the probate court did not err in receiving and acting upon the testimony establishing these facts.
9. It is further claimed on the part of the plaintiff in error that the proof fails to show an inability to agree on the part of the two railway companies. Upon this question we think *389 we are entitled to look to the whole record, as was done by the court in the case of Powers v. R’y Co., 33 Ohio St. 429, 432-3. We think that the act of 1872, already cited, material portions of which are incorporated into the present statute, did not, in requiring the preliminary hearing to take place before the jury is empanelled, change materially the rule in this regard. And looking into the whole record, we find it permeated and saturated with evidence of the fact that it was absolutely impossible for these contesting companies to agree upon the amount or measure of compensation to be allowed. From the beginning of this controversy there has been and continues to be, as appears from the record, a radical and irreconcilable difference of opinion — an “ irrepressible conflict ” — so to speak, as to the rules and principles which should be applied in ascertaining the measure of compensation to be paid.
10. As to the proof upon the question of the necessity for making the appropriation, we have this to say: It was remarked by Judge Ranney, in delivering his opinion in the case of Giesy v. R. R. Co., 4 Ohio St. 308, 325, as follows: “ The power of eminent domain is rather a political than judicial power, and by our constitution its exercise is intrusted to the general assembly, so far as determining the necessity and propriety of the appropriation is concerned; while the courts are only invested with authority to determine the amount of compensation to be paid. The power may be exercised directly by that body, or through subordinate agencies; and while it would seem to me much more consistent with a proper regard for private rights, that the question of necessity as -well as compensation should here, as in England, be determined by some impartial public tribunal, I am not prepared to say that any well-founded constitutional objection exists to committing its exercise to the corporation authorized to construct the work, as has been generally done in this state.” And it was further said by that judge that “ it is no ob *390 jection' to the exercise of the power, that other lands, equally feasible, can be obtained by purchase.” (p. 327.)
We also call attention in this connection to the fact, that by statute the common council of a municipal corporation is invested with the power to determine the question of the necessity of an appropriation in all cases where such corporation is authorized to take property for public use. See Rev. Stat., 6453.
We have before called attention to the provisions of sec. 2 of the ordinance of March 27,1889, granting to Robison or his successors authority to occupy and use upon certain streets the railway tracks of the plaintiff in error. By the terms of the ordinance of July 28,1890, the defendant in error is imperatively required to make use of the tracks of the consolidated company upon that portion of Adams street involved in this controversy. If we hold, as claimed by plaintiff in error, that the ordinance last named was not operative at the time this appropriation proceeding Avas commenced, it then becomes a ■question under the ordinance of March 27, 1889, whether the probate judge, iii the exercise of his power and jurisdiction, might overrule or disregard this action on the part, of the council. That body in the exercise of its legitimate authority has authorized the defendant in error, as the assignee of, and successor to the rights of David Robison, Jr., to operate its line of railway Upon certain designated streets; no other streets than those so designated may be dc\Toted to that purpose by the appropriating company. The statute requires the railway company to obtain the Avritten consents of the •OAvners of property abutting upon such streets before proceeding Avith the proposed enterprise. The council has also authorized the appropriating company to use, upon certain streets named, the tracks of the consolidáted company ; and as before stated, by an ordinance of a later date, it has required this to be done upon that portion of Adams street here in question. In the absence of evidence impeaching this action of the council for fraud,- avg think the probate judge is con- *391 -eluded thereby, and that he is not at liberty to annul or disregard it.
11. Exception was also taken to the action of the probate -court in excluding the ordinance of November 25, 1889, “to authorize the use of streets, alleys, and other public places of the city of Toledo, for the purpose of constructing and operating electric mains, wires, and appliances for propelling and ■operating of street cars,” referred to in the ordinance of July 28, 1890, and made part thereof. We think this evidence .should have been received, and cannot understand upon what ground it was rejected. But upon a careful examination of ■the provisions of that ordinance, in connection with the evidence contained in the record, we think that the plaintiff' in -error was not prejudiced by the refusal of the court to admit it.
12. The objection made to the introduction in evidence of the certified copy of the articles of incoporation of the appropriating company, was, we think, properly overruled. These .articles are very broad and comprehensive in their terms, and possibly may go further than allowable; but this objection ■can only be taken, as we think, in a proceeding in quo warranto instituted in behalf the state.
13. Upon the preliminary hearing a portion of the records of the appropriating company, being pages from 1 to 13 inclusive, was offered in evidence by that company. This was ■objected to, the objection overruled) and exception taken. In the further progress of the hearing this evidence was again offered, the objection thereto was renewed, and overruled, .and exception taken; but in the same paragraph of the record it appears that this evidence was admitted, “subject to all objections and exceptions on the part of the defendant.” At ■the same time there was also offered in evidence so much of said record as appears upon pages 14 to 24 thereof inclusive. This was also objected to, but was received in the same manner as the portion first offered.
Proof was given tending to establish the genuineness of .these records.
*392 In connection with the cross-examination, and upon re-examination, other portions of the record were given in evidence against the objections of the plaintiff in error, it being insisted among other things, that the entire record should go in evidence, or no part thereof. Exception to this- action of the court was duly taken by the plaintiff in error.
We do not think that the appropriating company was bound to give in evidence the entire record. The plaintiff in error was entitled, if it saw fit, to introduce any part of the record containing matter that appeared to be pertinent to the issues on trial. And we think that the evidence given to establish the - authenticity and genuineness of the record warranted the court in receiving and acting upon it.
It was further objected in this connection that the record evidence'so offered contained what purported to be a waiver of notice of publication of the time and place of opening the books -for stock subscriptions signed by all the incorporators; also the original subscriptions to the capital stock; also a certificate to the effect that ten per cent, of the capital stock subscribed had been paid in ; also the original call of the meeting of the stockholders, appearing to be subscribed by all the incorporators and stockholders; also the waiver of notice by publication of the stockholders meeting for the election of directors; and it is insisted that all these were matters not properly provable by the record, but that they should have been established by independent evidence.
The statute, in express terms, provides that the waiver of notice by publication of the time and place of the opening of books for subscription to the capital stock, shall be entered or copied in the records of the corporation. (Sec. 3242.) The statute also imperatively requires that a record be kept of all stock subscribed and transferred; also, “ that the books and records of such corporation shall at all reasonable times be open to the inspection of every stockholder.” (Sec. 3254.) It has been held that the provision of sec. 3244 requiring notice to be given, after ten per cent, of the capital stock has *393 been subscribed, of tbe time and place of the meeting to be held for the purpose of choosing directors, is directory merely ; and that the acts of the directors cannot be questioned collaterally on account of irregularity in their election. Chamberlain v. R. R. Co., 15 Ohio St. 225. The record shows the election of the directors of the company in regular form; that the organization was duly perfected; and while there may be some question as to whether the record was competent to prove all the facts recited therein, we think it sufficiently appears therefrom that The Toledo Electric Street Railway Company was duly organized as a corporation and is entitled to maintain its proceeding in appropriation.
14. It was further urged that the ordinance of July 28th, 1890, bad not become operative at the time the proceeding to appropriate was instituted, and that the appropriating company could not, as the mere successor to, or assignee of, the rights of David Robinson, Jr., under the ordinance of Max’ch .27, 1889, and of the rights acquired by him under the subsequent ordinances, exercise the power of eminent domain.
The ordinance of July 28, 1890, provides that it “shall take effect and be in force from and after its passage and legal publication,” and the filing with the city clerk of a written acceptance of the terms and conditions thereof. The required acceptance was filed on the 30th of July, 1890, but publication was not made until after the commencement of the proceedings. It is contended on the part of the defendant in error that the ordinance is not an ordinance of a general nature, and that no publication was required. This is denied by opposite counsel, and it is further claimed by them, that whatever may be its character, by force of the terms employed, it is not to take effect until after publication has been made.
As to the claim pressed upon our attention that the defendant in error cannot, as the assignee of the rights conferred by the previous ordinances, exercise the power of eminent domain, we suggest that the appropriating company, as heretofore remarked, derives its power to exercise the right of *394 eminent domain, from the state, u'nder the constitution and the general laws of the state, and not from Mr. Robison, or the city council. From the latter it has acquired the right to operate and maintain a system of street railways within the limits of the city; and while the city council has, by its ordinances provdied for the use by the appropriating company of certain portions of the railway tracks of the plaintiff in error, this'action of the council avails nothing, until the defendant in error has duly proceeded, in virtue of its articles of incorporation and the general laws of the state,' to condemn the right to use the tracks of the plaintiff in error, and has paid the compensation awarded as the value of such use.
If the ordinance of July 28, 1890, was not in force at the date of the commencement of the appropriation proceedings, then they were properly instituted and conducted under the ordinance of March 27, 1889. If the former ordinance became operative during the pendency of the proceedings, then nothing therein contained is inconsistent with or renders ineffectual the proceedings commenced.
15. Upon the close of the testimony on the preliminary hearing, counsel for plaintiff in error requested the court “ to state in writing the conclusions of fact found separately from the conclusions oflaw.”
The finding of the court is as follows: "That it (the plaintiff in the appropriation proceedings) is a corporation, and has the legal right to make the appropriation prayed for • that the plaintiff is unable to agree with the owners of said property, ás to the compensation to be paid therefor, and that there is a necessity for such appropriation as stated in the petition. To this finding the plaintiff in error excepted.
We find no error in this action of the court. The evidence fully warranted the conclusion to which it arrived, and we do-not see how it was practicable for the court to comply with the request of the plaintiff in error. At most, it could do no-more than set out the evidence on yvhich its findings was based, and this has been done in the form of a bill of exceptions *395 taken at the hearing, and made part of the record in the case.And see Oxford Township v. Columbia, 38 Ohio St. 87, 94.
16. We come now to a question of great importance. It relates to the measure of compensation to which the plaintiff in error is entitled for the use of its tracks and other structures by the appropriating company. This question is presented in the record in various forms; in exceptions to the rulings of the court in admitting testimony offered by the defendant in error; in rejecting testimony offered by the plaintiff in error; in refusing to instruct the jury as requested by the plaintiff in error; and m the charge of the court as given to the jury. It was agreed on all hands that the plaintiff in error was entitled to full compensation for the property of that company to the extent that it was sought to be taken ; the principal contention was as to what constitutes “ property ” in the sense in which that term is used in this connection. The appropriating company claimed in effect that it is limited to the rails and other materials in place ; that is, to the value of the material and the cost of construction, and the reasonable cost of keeping the structure in proper repair; while its adversary insisted that in estimating the compensation to be awarded there should be taken into account the value of the franchise to operate the street railway in the streets of Toledo, acquired by the plaintiff in error under the ordinance before mentioned and its contract with the city. It.is insisted that the plaintiff in error was thereby invested with the exclusive right and easement to use, for street railway purposes, so much of the streets of the city as is occupied by its tracks. As a result of this view of the rights of the plaintiff in error, it is insisted, among other things, that it is entitled to be paid for the loss of fares which would be occasioned by the proposed joint use and occupancy of its tracks; for the inconvenience and interruptions to business caused thereby, and for the consequent depreciation in value of other portions of the line forming part of the street railway system. These and kindred views were presented by the parties during the trial, in every conceivable form.
*396 The court charged the jury very fully upon these various propositions. I quote the following portions of the charge relating to the rules which the jury were instructed to observe in ascertaining the compensation to be allowed :
“ The property of the Toledo Consolidated Railway Company consists of such structures as have been placed there by the company, from the center of Michigan street to the curb line of Summit street on Adams street.
“ No franchise, rights, interests, or easements in the soil covered by these structures, are a part of defendant’s property, for which it is entitled to compensation, and must be excluded from your consideration.
“ This proceeding is not intended to appropriate the physical property or title of the property, or any portion of it.
“ When your award is made, the property in question will remain the property of the defendant, the same as it is now.
“ The right asked to be appropriated, and for which you are to award compensation and damages, is the right to use and occupy, jointly and equally, the property of the defendant company, as above defined, between Michigan and Summit street on Adams street, for the purpose of operating its cars, over and upon, the existing tracks, propelled and moved by electric power.
“ In ascertaining the amount that should be awarded for this use, you will bear in mind the definition above given you of what constitutes the property under consideration.
“ For the purpose of enabling you to arrive at a fair and correct conclusion on the proper amount to be awarded for this use, you have been allowed to view and inspect the property, in order that you might see its present condition and construction. In your deliberations you are authorized to use this inspection so far as it may aid your judgment. In connection with this inspection and view you are to consider carefully all the evidence before you, bearing on the condition and value of the property. To aid you in this consideration, evidence has been admitted, showing the mode, date *397 and cost of construction, the condition of the property at the present time as the result of its use. The same may be said of the paving required to be constructed and maintained by the defendant. Yon have inspected it, have heard the testimony relating to the mode of construction, the material used, the cost, the effect of use, and its present condition. All this evidence, and any other, that in your judgment may throw light upon the question of the present condition and value of this property, you should carefully consider; and your award for the joint and equal use and occupation of this property, taken in its present condition, should be such as will fully and fairly compensate the defendant for the joint and equal use and occupation.
“ Upon this question you should not only take into consideration the construction, constituting the tracks of the defendant, but also the paving, which the defendant has been required, by its ordinance to construct.
“ In considering the value of this property, as one of the tests for arriving at the value of its use, you should exclude all value arising out of any franchise or easement in the street, or from its earning capacity, or from its physical connection with any other portion of the defendant’s- road or system of roads.
“ The plaintiff also asks to appropriate the right to make the necessary connections, and make and place such electrical and other appliances as will be necessary to properly move, propel and operate its electric ears, over the tracks, side-tracks, switches, turnouts and turnovers in this street.
“ Whatever damage you may find results to the defendant’s property in making this adjustment you should award to the defendant in full, but you vdll not take into consideration any damage by reason of interference, delay, or loss of traffic resulting therefrom.
“You are further required to find how much less value the remaining portion of the defendant’s property will be after the appropriation of this joint and equal rise is made.
*398 “ The court instructs you that ‘ the remaining portion of the property’ is all of the defendant’s tangible property, consisting of their entire railway construction in Adams street, between Michigan and Summit streets, subject to the equal and joint use and occupation by the plaintiff, for the purpose named in the petition.
“ In considering‘this question you will make use of your observation and inspection so far as they may aid your judgment; and you will also carefully weigh and consider all the evidence that has been admitted, bearing on this breach of the-case.
“ The burden of keeping these tracks and pavement in repair to properly accommodate the public and the companies in the use of this road and street by such cars as may be operated over it, and as the public necessities and convenience may require, will rest upon the defendant company. For this-reason you must estimate what portion of these burthens will be imposed by the plaintiff’s use.
“ You should ascertain in what way injury or damage will result to this property as the result of plaintiff’s use, the extent of the damage, the nature of the damage, the best mode-of repairing or restoring the property, and the cost to the defendant company for repairing, restoring and making good this injury or damage resulting from plaintiff’s use, and the-time when such expenditure will become necessary.
“ To aid you in the determination of those questions, the-testimony of witnesses engaged in this line of business has been produced by both parties.
“ It is your province to determine the weight to be given to each of these witnesses. Their interest, their candor, their intelligence, their knowledge of the subject, are all elements to be considered in estimating this weight.
“They have given you their judgment upon the cost of the present construction of the existing plant in Adams street,, between Michigan and Summit streets, the effect upon it by its use up to the present time, the effect upon the present con *399 struction of tbe use of horse cars and electric cars; the cost of necessary repairs to and renewals of the structure, the probable cost of maintenance, of keeping the tracks clear from snow, ice and other obstructions, the probable life of the structure and its component parts, under the different uses to which it is liable to be put, the different methods and systems of construction, the kind of pavement and material and method of its construction, its cost, the circumstances under which it might be necessary to take it, or portions of it up, and the method of doing so, the manner of dressing and replacing the paving stones, and the probable life of the present pavement.
“ It is from your observation in connection with all the evidence bearing on these questions, that you are to find and award the amount which shall fairly and fully compensate the defendant for the damage resulting to their remaining property after you have fully and fairly awarded compensation to the defendant for the joint and equal use and occupation by the plaintiff, as asked for in plaintiff’s petition.
“ You will notice that I have made use of the terms ‘ compensation ’ and ‘ damages.’ These terms have a different application in this proceeding.
“ Compensation is to be made for the right to use and occupy, and damage is to be awarded for the result of this use and occupation.
“ You will be required to make your award for each separately.
“ Compensation should be such as will fully and fairly reimburse the defendant for one-half of the capital invested in its entire railway structures and the pavement in the portion of the street covered by the appropriation, less the value of' the railway structure at the expiration of its ordinance.
“ The damage should be such as will fairly and fully reimburse the defendant for the expense caused by the use of the railway construction and pavement by the plaintiff.
“ The destruction of the tracks and pavement, by the use of *400 the street by the public, imposes a common burthen in which each should share equally.
“ The destruction of the tracks and pavement resulting from their use by the two companies should be shared by the companies in the proportion that the use by each contributes to this destruction.
“ The taxes should be shared equally.
“ The amount of your award must be paid in money before the plaintiff can take possession bf the property and avail itself of the rights acquired by your award.
“ Therefore in all cases where you find the disbursements, required to be made by the defendant, for which you will render an award, are to be made at some future period, you should deduct from the amount of the actual expenditure to be made, such an amount as the reasonable use of the money would be worth during the intervening time.
“ Your award for compensation and damage must cover the unexpired term of the defendant’s grant from the city, which will expire by limitation, November 9, 1910.
“ It is to be presumed that the companies will conduct their business in the joint use of these tracks as business men, and in such a manner as to interfere as . little as possible with the use by the other, and in accordance with such regulations as may be made from time to time by the common council, but as to whether they will be able to do so in harmony or not, is a matter with which you need not concern yourselves.”
Afterward the court modified its charge in one particular, as follows :
“ Under the interpretation gives to the defendant’s ordinance by the court, that the burthen of maintaing the tracks would rest upon the defendant during the life of the ordinance, the court took the view that the difference between the value of the tracks now and at the expiration of the ordinance, would represent the depreciation; and that, as the defendant would be the owner of the property remaining, if the plaintiff was charged with-half of the present value, it should have *401 credit for the present worth of one-half the then value. This is a modification of the former charge, to the extent of basing , the then value on its present worth.”
Many exceptions were taken to the charge of the court as it was given, relating mostly to the questions that I have already noticed as to the principles and rules to be applied in measuring the compensation to be awarded.
We have devoted much time and labor to the examination of the very important questions here presented, and cannot avoid the conviction that they are, in the main, met and substantially settled by the decisions of the Supreme Court in the eases of R. R. Co. v. R. R. Co., 36 Ohio St. 239; Railway v. Railway, 30 Ohio St. 604 ; and Railway Company v. The Telegrayh Association, 48 Ohio St. 390, 433. It is true that in the case of Railway v. Railway, the right to make a railroad crossing and the measure of compensation to be awarded in such case was involved; here the controversy relates to the use of tracks longitudinally; nevertheless, in our judgment, the rules to be applied in both classes of cases are substantially the same. In the case of R. R. Co. v. R. R. Co., 36 Ohio St. 239, in granting to the complaining company the right or franchise to operate its railway upon certain streets of the city, the grant was made subject to such terms and conditions as the council might thereafter prescribe; and in the exercise of this power the council afterwards granted to a company subsequently organized the right to use a portion of the tracks of the first company, upon the payment of reasonable compensation. ’These companies failing to agree upon the amount to be paid, the council prescribed a certain .sum, which was tendered, and refused. The first company brought suit against the second company, to enjoin the use of its tracks, alleging that the compensation so prescribed was inadequate, but it made no proof upon this subject, ’and for that reason the petition was dismissed. The record in the case as reported, shows the principles upon which the council acted in determining the amount to be paid as “ reasonable compensa *402 tion ” for the use of the tracks ; namely, upon certain streets the second company was required to pay one-half the ascertained value of the tracks, including the street railroad pavements laid therewith, and one-half the expenses thereafter to. be incurred in keeping said tracks and pavements in repair, or in making such changes or alterations in the tracks as the city couucil might thereafter require. The same principle was applied to other streets named, the proportion, howeyer, being limited to one-third.
It will be observed that nothing was allowed by the council in the above case for the easement, for the loss of fares, for delays and interruptions of business, or for depreciation in value of the tracks of the plaintiff. This was obvious to the court in passing upon the case. It was plain that the council did not take into consideration any of these elements in fixing the “ reasonable compensation.” And all this was urged upon the court with much force by counsel, (pp. 245-248). The court said that no evidence had been given tending to show that the compensation fixed was inadequate; but the facts appearing in the case did show, conclusively, that nothing had been allowed by the council beyond a proportionate amount of the value of the materials in place, and the cost of future repairs, and for making such changes as might thereafter be required by the council; and had the court been of the opinion that the plaintiff was entitled to compensation for the matters claimed by counsal, it would have necessarily followed, as it seems to us, that the prayer of the petition should have been granted; lor the city council did not possess arbitrary power in' the matter. The court indicates in clear terms, that the company was entitled to show by proofthat the compensation provided for by the city couucil was inadequate; and that no compensation was allowed in respect to the matters complained of is, as before stated, manifest in the record. That part of the opinion of the court, contained on pages 250 and 252, may be consulted with profit.
In the state of Massachusetts, the question we are now considering has undergone much discussion and car'eful consider *403 ation, and I desire to quote from the opinion of Gray, C. J., in the case of Metropolitan R. R. Co. v. Highland St. R’y Co., 118 Mass. 290, 295.
“ The Metropolitan Railroad Company, under its charter from the legislature, doubtless had a franchise to run cars for hire upon its tracks as located by the mayor and aldermen, and its right in this respect was exclusive as against other persons and corporations to whom the legislature had not granted like rights. Metropolitan Railroad v. Quincy Railroad, 12 Allen, 262, 269, 270.
“ But, as was said by Chief Justice Shaw, in the leading case of Commonwealth v. Temple, 14 Gray, 69, 75, ‘the accommodation of travelers, of all who have occasion to use them, at certain rates of fare, is the leading object and public benefit, for which these special modes of using the highway are grouted, and not the profit of the proprietors/ Richardson v. Sibley, 11 Allen, 65, 67, S. P. The legislature, having reserved the power to alter, amend and repeal this charter, might lawfully, whenever deemed necessary for the better accommodation of the public, authorize another corporation to lay a similar track through the same streets, or to use the track of the first corporation, making compensation to that company for the use and wear of its tracks, without making it any compensation for the diminution of its profits or of the value of its franchise. Rev. Stat., ch. 44, § 23; Stats. 1853, ch. 353, § 1; 1859, ch. 9, § 2; Gen. Stats, ch. 68, § 41; Comr’s of Fisheries v. Holyoke Water Power Co., 104 Mass. 446 ; s. c. 15 Wall. 500, Parker v. Metropolitan Railroad, 109 Mass. 506.
“ By the act incorporating the respondent corporation, it was authorized to ‘ build, maintain and operate a street railway in the city of Boston, between Grove Hall and the line of Temple Place street/ over Warren street, parts of Washington and Tremout streets, Eliot street and Temple Place street (over which the tracks of the Metropolitan Railroad Company had been already laid according to its charter), and *404 other streets ; and to ‘ enter upon and use with its own motive power the tracks of any street railway, laid in the streets through which the tracks of said corporation may be located, or any part thereof; ’ and it was provided that ' in granting a location the board of aldermen may, if the interests of public travel demand, require said corporation to lay one or more additional tracks in any street now occupied by the track of any other street railway, and may restrict said corporation to the use of such additional track.’ St. 1872, ch. 212.
“ The board of aldermen ordered the tracks <. f the respondent to be located over the streets above named, and other streets mentioned in its charter, and by the same order provided as follows: ‘ Said company shall have the right to make suitable connections, switches, curves and turnouts, to unite the tracks hereby located, into a continuous line of railway, from Grove Hall to Temple Place. And whereas the interests of public travel require that the said Highland Street Railway Company shall not lay additional tracks in any street where tracks are now located and constructed, except so far as may be necessary to fill the above location, this location is on the express condition that any tracks, already laid in the streets or portions of streets above mentioned, shall be deemed tracks within the above location, for the use of the Highland Street Railway Company, to be enjoyed under the provisions, as to’ compensation to the corporation owning the same, provided by law.’
l( By virtue of the respondent’s charter, and of this order of the board of aldermen, the tracks of the Metropolitan Railroad Company in these streets were within the limits of the franchise granted to each corporation; and the respondent, so far as the franchise of running cars over these streets was concerned, had as much right as the petitioner, and, while it was bound to compensate the petitioner for the use and wear of its tracks, was not bound to make it any compensation for thereby interfering with its franchise or profits.
“ In the case of Metropolitan Railroad v. Quincy Railroad, *405 12 Allen 262, no part of the Metropolitan railroad was within the franchise limits of the Quincy Railroad Company, and it was upon that ground that it was held by the commissioners- and by the court that the first corporation hada peculiar franchise and right in its own tracks, for which it was entitled to-compensation from the second corporation.
“ The law that must govern this case is so well settled by' our own decisions, that it is hardly necessary to refer to the-authorities elsewhere, cited for the petitioner. But it may be-observed that in Jersey City & Bergen Railroad v. Jersey City & Hoboken Horse Railroad, 5 C. E. Green, 61, no compensation whatever was made for the use of the tracks of the first corporation, and the court had no occasion to consider the measure and limits of such compensation; and that in Dillon on Municipal Corporations, (2d ed.) § 578, it is-said that ‘ a legislative grant of authority to construct a street railway is not exclusive, unless so declared in terms, and therefore the legislature may, at will, and without compensation to the first company, authorize a second one on the same streets or line, unless it has disabled itself by making the first grant irrepealable and exclusive.5
See, also, the report of the Massachusetts Railway Commision, 1 Redfield on Railways, 3d ed., 634; in later editions reprinted in Yol. 3.
It is true that in the case above cited from 118 Mass. Rep., it appears that the legislature had reserved, as it might lawfully do, “ the power to alter, amend and repeal the charter’5' of the street railway corporation, whose rights, it was claimed,. had been invaded. But w'hile no such power was reserved, in. express terms, in the ordinance under which the plaintiff in» error claims, nevertheless there is contained in the constitution» of this state this provision: “Corporations may be formed under general laws ; but all such law's may, from time to time, be altered or repealed.’5 Article 13, section 2. And, referring to> this section, Johnson, J., in his opinion in the case of Railway *406 v. Railway, 30 Ohio St. 604, 614, says: “ The rights and franchises .gran ted are subject to all the incidents that necessarily flow from this power to repeal or alter the charter.” We appreciate the distinction urged with much force by counsel for plaintiff in error, between a franchise to be a corporation, and a franchise or contract right to operate a street railway upon certain specified streets, acquired by such corporation. And while it may be a serious question as to whether such franchise or contract right can be held to possess material value after the franchise to be a corporation — in other words, the power to exercise the contract right to operate the street railway — has been withdrawn, we are clear, as heretofore announced in this opinion, that so long as the franchise to operate a street railway exists, such right is to be regarded as property And it was largely upon this ground that wre held that until the passage of the act of April 11th, 1890, there was no statute in force authorizing the defendant in error to maintain proceedings in condemnation against the plaintiff in error. But this brings us once more directly to the question as to whether this franchise right of the plaintiff, is exclusive in its character; if .it be, then undoubtedly, to the extent to which it is invaded, the appropriating company must make compensation. If it is not, then nothing is taken for which compensation may be demanded.
It is apparent, from what we have already said, that in our opinion, the exclusive right or franchise claimed by the plaintiff in error, has never been conferred upon it. This view we regard as fully in accord with the doctrine established by the authorities cited, and as the necessary result of the rulings made in Ohio. We have several times remarked in the course of this opinion that the council possesses no power to grant, either directly or indirectly, such exclusive right. The provisions of Section 2, Article 13 of the constitution, as well as of the several statutes regulating and limiting the powers of the council and the franchise rights acquired under ordinances of the council, form a part of such ordinances in the same manner *407 as if expressly incorporated therewith. “ Their contract of subscription,” said McIlvaine, J., “ must be construed as having been made with reference to the consolidation act, by which they, (the stock subscribers), are bound as fully as if its provisions had been copied into their contract of subscription.” R. R. Co. v. Brown, 26 Ohio St. 223, 224, 238-9. See, also, the reasoning of the supreme court in Railway Company v. Telegraph Association, 48 Ohio St. 390, 432-3.
17. Another question presented in the record remains to be noticed. On the 31st of December, 1890, after the rendition of the verdict, and the overruling of the motion for a new trial, the court, proceeded under section 6432, of the Revised Statutes, to enter a judgment confirming the verdict. At that time no part of the money awarded by the verdict had been paid, and consequently the order provided for in section 6433, had not been entered. The judgment of confirmation provides, among other things, as follows:
“Thereupon the court proceeding to enter judgment upon the said verdict heretofore rendered herein, according to law, it is therefore ordered and adjudged by the court that said verdict be and the same hereby is, confirmed; to which order and judgment both the plaintiff and The Toledo Consolidated Street Railway Company then and there duly excepted.
“And it is further ordered that upon payment to the parties entitled thereto, or deposit in this court of the amount which said defendants are entitled to under said verdict, to-wit; the sum of $17,500, together with the costs herein taxed against said plaintiff, amounting to $896. 87, said plaintiff The Toledo Electric Street Railway Company, shall be entitled to take possession of and hold the property, rights, and interests so appropriated for the uses and purposes for which the appropriation was sought, as set forth in the petition, to all of which judgment the plaintiff and the defendant The Toledo Consolidated Street Railway Company then and there excepted. And the said defendant The Toledo Consolidated Street Railway Company is to keep up and maintain said *408 property in good order and condition for such use; to which order and judgment as to the order and condition to be kept by said company, said defendant The Toledo Consolidated Street Railway Company then and there duly excepted.
“And upon payment by the said plaintiff to the said parties entitled thereto as aforesaid, or deposit in this court of said sum of $17,500 and said sum of $896.87, costs taxed against said plaintiff as aforesaid, process necessary to place said plaintiff in possession of said property is awarded.”
Special objection is taken to that portion ofthis order which reads as follows: “ And the said defendant, the said Consolidated Street Railway Company, is to keep and maintain said property in good order and condition for such use ”; the right to the use being limited, as shown in the charge of the court, to the duration of the franchise granted to the Consolidated Company. This instruction proceeded upon the view adopted by the probate coui’t that the plaintiff in error was bound as the owner thereof to keep the railway tracks in repair for the joint and equal use of both companies, during the period above named, and consequently that it was entitled to have the probable reasonable expense thereof, to the extent that the same should be borne by the appropriating company, included in the finding and verdict of the jury. The jury awarded as such compensation, the sum of $11,500.
It is insisted on the part of the plaintiff in error that the probate court was absolutely without power to make the order which appears of record, requiring it to keep and maintain the property coveredby the appropriation proceedings, in good condition. It is a gravejjquestion whether the probate court was not in error in instructing the jury to return in their verdict compensation to the Consolidated Company for expenditures tobe incurred in the future in keeping the tracks in repair. But we do not find it necessary to determine this question. The appropriating company is not here asking the court to modify or reverse this judgment; and it is the only party entitled to complain if any error exists in this action of the court-. If *409 the court was right in its instruction to the jury, then the plaintiff in error cannot- be prejudiced by the order made, for it is simply required thereby to do that which the law makes it its duty to do. If the court was in error, and the appropriating company has since paid in the money, including the large sum of $11,500.00 awarded as compensation for future repairs, then to expunge from the record the clause complained of, might work serious injustice to the latter company. If the court, in making the order exceeded its powers, and its action in that respect is a nullity, no harm is worked thereby to the plaintiff in error.
Barton Smith and J. U. Doyle, attorneys for The Toledo Consolidated Street Railway Company.
O. S. Bmmbaak, E. D. Potter, Jr., and Frank Ii. FLurd, attorneys for The Toledo Electric Street Railway Company.
Many questions have been presented and argued by counsel, that are not discussed in this opinion ; but none of them have been overlooked, and they have all been considered. Among these is the objection taken to the course pursued by counsel in stating the case for the defendant in error to the jury. While we regard many things contained in that statement as the proper subject of sharp criticism, and cannot resist the conviction that the court should have peremptorily interfered, nevertheless, we think it clearly manifest,^regard jbeing had to the amount of the verdict- returned by the jury, that the plaintiff in error was in no degree prejudiced thereby.
In conclusion, wTe content ourselves with saying, that we fail to find in the record any sufficient cause for disturbing the judgment of the court below, and it is therefore affirmed.