Birchard, C. J.
This road having its termini within the corporate limits of the town of Milan, is'claimed te have been exclusively within the jurisdiction of the corporate authorities *103 of that town, and beyond the control of the county commissioners. It has already been decided at this term, that the board of commissioners have jurisdiction to establish, alter and vacate county roads, and that the rights and interests of the county are paramount to the control of village corporations, so that the commissioners may enter the limits of the corporation, and establish a county road when demanded for public convenience. The exception to this rule must depend upon an express restriction in the acts of incorporation, when such exception exists. That decision is decisive of the main question in controversy in this case, and I refer to the report of that case for the grounds of this opinion.
But it is claimed that there was error in affirming the first report of the committee appointed by the Court of Common Pleas to review the road. It appears that the committee were directed to meet on the 10th day of March, 1847, or within five days thereafter, and view said road, and to report at the next term of the Court the order for review, and how they shall have executed the same. . The committee, in executing the order, met at the appointed place on the 10th of March, were duly qualified, took to their aid the necessary assistance, and made their examination. In their report, which was returned into Court at the return term, they say. that they were then of opinion the road would be too expensive, and were resolved to report adversely, but a few days after, discovering that a majority of their number had been under a mistake, &c., they again met on the 22d day of March, &c., agreed to reconsider their former conclusion, and now report favorably, &c. This report was approved, and the Court ordered the road to be established, and rendered judgment against the defendants for costs.
The point taken in support of the first assignment of error is, that the powers of the viewers expired at their first meeting. That they were functus officio, when they met on the 22d of May. We have not been able to discover anything in the statutes, which would require us to come to any such conclusion; and there is nothing in the case to call for an interpretation of *104 the order given to the viewers of the road, different from that given by the Court from which it emanated. It was in the na- ■ ture of a writ, and following the provisions of the fifth section of the statute, (Swan’s St. p. 798,) which specifies that the writs issued by order of the commissioners, shall appoint a time for meeting; the order of the Court, in this instance, fixed a time for the meeting. The 17th section, under which the Court acted, however, contains nothing requiring any limitation of the time within which the committee were to act. The order, and journal entry, in virtue of which the clerk issued it, neither of them, fix any limit to the force of the writ. They merely direct the meeting of the viewers, on the 10th, 'or within five days thereafter. And for aught that we can discover, it would have been competent for them to meet at any time between the 10th and 15th, and adjourn to such time as might suit their convenience, so that they had their report in Court, at the return day.
The only question which remains to be disposed of is,' was there error in rendering a judgment for costs, against the re-, monstrants ?
The 11th section of the act, (Swan’s St. p. 801,) fixes the rates of compensation for services under the act, w'hich are to be charged as costs and expenses, and provides for their payment out of the county treasury, on the order of the county auditor.
To secure the county treasurer, the commissioners are required to take bonds. Thus, the 2d section requires a bond to be taken from one or more of the petitioners for the road, condi - tioned for the payment of the costs, &c., unless the road shall be established.
The 16th section authorized a bond from the remonstrants, conditioned for the payment of the costs into the county treasury, in the event of failure to succeed in their application.
The 17th section provides for an appeal bond, to be approved by the county auditor.
Section 1st, of the act passed March 14, 1836, (Swan’s St. *105 p. 803,) makes provision for collecting ■ these bonds, by suit, on neglect or refusal of the party liable “ to pay into the ury, agreeably to the tenor of their bond, all costs and ses.” In view; of all these enactments, it seems to us that the intent of the Legislature was that the county treasury should be liable in the first instance, for the costs in casesdike this, and that the commissioners, should see that the treasury was rendered secure, by the means thus provided for reimbursement. When the méans are thus provided, to meet a particular case, there would seem to be but slight reason for resorting to any other, not named in the statute. The jurisdiction exercised by the Courts of Common Pleas, under these statutes, is purely statutory. It is unknown to the common law, and hence the propriety of gathering from the words of the statutes, and from that source alone, the extent of their powers in reference to the subject. We find nothing warranting a judgment for costs, in the law, and inasmuch as the costs are provided for in another way, feel constrained to declare the judgment for costs against Fowler and others, erroneous.
The proceedings of the Court of Common Pleas, will be affirmed in all things else, and reversed as to the costs. Under the act regulating the practice in writs of error, the costs in this Court will be equally divided.