**COUNTY BOARD OF EQUALIZATION, PITTSBURG COUNTY, Oklahoma, Plaintiff in Error,**

v.

**MUSKOGEE INDUSTRIAL FINANCE CORPORATION, Defendant in Error.**

No. 38502.

Supreme Court of Oklahoma.

Nov. 29, 1960.

Ewing C. Sadler, County Atty. of Pittsburg County, McAlester, for plaintiff in error.

Arnote, Bratton & Allford, McAlester, R. M. Mountcastle, Muskogee, for defendant in error.

JOHNSON, Justice.

The Pittsburg County Board of Equalization denied the Muskogee Industrial Finance Corporation's protest of allegedly arbitrary tax assessments against it of certain intangible property. The said corporation appealed to the District Court of Pittsburg County, and the District Court reversed the action of the Equalization Board, resulting in this appeal.

The assessments were made for the first time in 1955 and included past years beginning in 1952. The taxes so assessed were paid under protest pending determination of the appeal.

The sole issue involved in the case here on appeal rests upon the application of Section 1503, 68 O.S.1951, which concerns taxation of intangible personal property and became effective in 1939 and was amended in 1955, but such amendment is not material in this case. The pertinent part of said section reads as follows:

"The following intangible personal property, as defined in Section 1 of this Act, shall not be subject to taxation under this Act:

\* \* \* \* \* \*

"(d) All property of State and National banks, trust companies, and Morris Plan companies which are subjected to a tax measured by or according to net income."

The Muskogee Industrial Finance Corporation has been assessed and has paid a tax measured by or according to the company's net income for all years involved. The only dispute arises out of or from the application of the term "Morris Plan companies."

The finance corporation contends that the term is a generical classification and applies to any company carrying on a business identical to that of the Morris Plan companies. The equalization board contends that the term "Morris Plan companies" found in subdivision (d) of Section 1503, supra, referred to particular well-known companies and was not intended to apply generally to companies carrying on identical businesses; that the term was used specifically and not generically.

It was stipulated and agreed between the parties that the Muskogee Industrial Finance Corporation and the Morris Plan companies are both doing identical business; that they both accept money from the public for "Investment Certificates"; that both are within that class of finance business commonly known as Industrial Banks, and that neither carry on a phase of finance business which is not also conducted by the other.

Under these circumstances the trial court held that the Muskogee Industrial Finance Corporation was under the Statutes of Oklahoma (Sec. 1503, supra) a Morris Plan company within the meaning of said statute and that the assessments complained of are a discrimination against the plaintiff finance corporation and are in violation of the statute exempting such companies and therefore unconstitutional and void.

The County Board of Equalization principally relies upon our decision in Board of County Commissioners, etc. v. Remedial Finance Corporation, 186 Okl. 648, 100 P.2d 240, 242, which case involved claimed exemption from ad valorem taxes assessed against the finance company arguing that it was subject only to the in lieu taxes assessable against it under the provisions of Sections 886, 887 and 888, 68 O.S., as said sections then existed. The assessment involved in that case was for the year 1936, long prior to the initial enactment of the intangible personal property Tax Code of 1939, Article 4, Chapter 66, page 394, Session Laws 1939, now Sec. 1503(d), Title 68, O.S.1951, supra.

In the Remedial Finance Corporation case, supra, this court said:

"The journal of the 15th Legislature reveals that Article 6, Chapter 66, supra, as originally introduced, did not contain any reference to 'Morris Plan Company'. The words 'Morris Plan Company' were inserted in the bill by amendment of the joint conference committee of the House and Senate. *The Morris Plan Bank, or loan and investment companies generally, are not mentioned or referred to in the title to the act.*

"It is urged that because section 17 purports in its terms to be applicable to Morris Plan companies by reason of the insertion in said section of the name of 'Morris Plan Company' and that the Remedial Finance Corporation does an identical character of business and 'for the reason that all of said property is at all times in direct and substantial competition with Morris Plan Companies, and State and National Banks in this State,' the act applies to the Remedial Finance Corporation and to all other corporations conducting the identical character of business. *Whether the provision is valid and controlling as to the manner and method of taxation of Morris Plan companies is not before the court at this time for determination.* But in view of the evident purpose of the act we are constrained to hold that in the use of the name of the Morris Plan Company in the body of said act, the Legislature referred to a particular well-known company and did not intend to apply the provisions of said act generally to companies carrying on business in an identical manner. The term was used specifically and not generically. The contention, therefore, is without merit." (Emphasis supplied.)

The effect of this case in construing the statutes as they then existed was to hold that under the Income Tax Law, the sections providing for a tax in lieu of ad va-

lorem taxes, substituting therefor a tax on the net income of national banks, state banks and trust companies, evinced a legislative intention to make a separate classification of national banks as one class, state banks and trust companies as another class, and excluding (all) other corporations, such as the Remedial Finance Company and the Morris Plan companies, because such Morris Plan companies were not then mentioned in the title of the Act, and individuals as another class, and any reference therein as to the identical character of the business or whether the term Morris Plan company was used specifically or generically was mere dicta. Moreover, the Muskogee Industrial Finance Corporation has, as hereinbefore noted, paid its taxes on its net income for all years involved, under Sections 886, 887 and 888, 68 O.S. as they now exist under the subsequent re-enactments and re-codification of said sections. It is conceded that these sections as they now exist include Morris Plan companies. It is also conceded that the subsequently enacted intangible personal property tax law, Sec. 1503(d), 68 O.S., supra, includes Morris Plan companies.

Under the stipulation and proof the business conducted by the Muskogee Industrial Finance Corporation and that of the Morris Plan companies is identical in every respect. They differ only in name.

The County Assessor of Muskogee County testified that since 1939 both a Morris Plan company and the Muskogee Indusrial Finance Corporation have been doing business in his county, but that neither company has ever made an assessment nor has demand ever been made with reference to their intangible property for tax purposes; that he satisfied himself that both companies had paid income taxes for the year 1940 and subsequent years and considered them exempt from the intangible tax.

The manager of the Muskogee Industrial Finance Corporation's McAlester office testified that in 1955 the county assessed the company's intangibles for that year and prior years beginning with 1952. The intangible tax was paid under protest under the arbitrary assessment of the intangible tax, and the tax receipts were introduced in evidence.

The general manager of the Muskogee Industrial Finance Corporation since 1925 testified and introduced in evidence duplicates of the originals of the corporation's income tax returns to the State of Oklahoma; that the company has offices in Muskogee County, Pittsburg County and Mayes County, and for a time following 1939 the company had an office in Pontotoc County; that the Muskogee Industrial Finance Corporation had never paid any intangible tax because they paid an income tax on their net income; that they were arbitrarily assessed for intangible taxes in Pittsburg County in 1955 for the first time.

Other testimony was adduced showing that in other counties the Morris Plan companies bearing that name were never assessed on their intangibles because they paid taxes on net income.

The Remedial Finance Corporation case, supra, was pending on appeal in this court at the time of the legislative consideration and enactment of the Intangible Personal Property Tax Code. The decision of the trial court, which was still in force, had held that the term "Morris Plan company" in Section 888 was used in the generic sense and not the specific sense. The evidence in this case clearly indicates that because that particular controversy had arisen over the language "Morris Plan company" as used in Section 888, the legislature used the term "Morris Plan companies" in Section 1503 (d) in enacting the Intangible Tax Code, in order to make it even clearer that the legislature intended that the classification within the terminology was to include all organizations operating under the Morris Plan type of operation.

■ This factual situation invokes the rule applied in Magnolia Pipe Line Co. v. Oklahoma Tax Commission, 196 Okl. 633, 167 P.2d 884, at page 888, wherein this court said:

"Where the former statute was clear, or where its meaning had been judicial-

ly determined, the amendment may reasonably indicate that the intention of the legislature was to alter the law. Plummer v. Davis, 169 Okl. 374, 36 P. 2d 938. On the other hand where the meaning of the former statute was subject to serious doubt, or where controversies concerning its meaning had arisen, it may be presumed that the amendment was made to more clearly express the legislative intention previously indefinitely expressed."

This case (Magnolia) applies with equal force to the Remedial Finance Corporation case, supra which as we have already indicated construed Section 888 as referring only to banking institutions. Section 888 has been twice amended (1941 and 1947) since the decision in the Remedial Finance decision and now reads:

"(a) In lieu of the tax imposed by Section 876 every bank, trust company or credit union organized under the laws of this State or Morris Plan Company, * * *."

By no means could it be successfully argued that a credit union or trust company constitute a bank in a technical sense. Furthermore, sub-paragraph (b) of Section 888 makes reference to "Morris Plan Companies" and either the word "every" or the word "any" precedes every other reference to "Morris Plan Company" throughout Section 888. These references in Section 888 to (1) Morris Plan Companies, (2) "every * * * Morris Plan Company" and "any * * * Morris Plan Company" are clearly generic in each instance, notwithstanding the expressions in obiter dictum apparently to the contrary found in the Remedial Finance Corporation case, supra.

Another rule which prevents us from reversing the trial court's decision in this case is the construction placed on the Intangible Income Tax Code by the officers in the discharge of their duties relating thereto at and near the time of the enactment thereof and/or which has been long acquiesced in.

In the first syllabus of Oklahoma Tax Commission v. Liberty Nat. Bank & Trust Co., Okl., 289 P.2d 388, following Hunter v. State ex rel. City of Shawnee, 49 Okl. 672, 154 P. 545, this court said:

"The construction placed on a statute by officers in the discharge of their duties either at or near the time of the enactment which has been long acquiesced in, is a just medium for its judicial interpretation."

And in the Hunter case, supra, in discussing the rule, this Court stated [154 P. 546]:

"If there were any doubt of this being the correct construction of these statutes, unless the legislative intent to the contrary were clearly apparent, the fact that in the various counties officials charged with the enforcement thereof from the date of the statute until the present, in the discharge of their duties under the revenue laws of the territory and state, have given such statute the same construction as we give, would be of great weight, and we would not disregard such construction without the most cogent and persuasive reasons."

For other cases see subject, Statutes, West's Okl.Dig.

 Under the evidentiary circumstances of this case and our interpretation of the pertinent statutes and the foregoing authorities and cases cited therein, we are of the opinion that the judgment of the trial court should be sustained, and we so hold. This holding conforms with the rule announced in the fifth and sixth paragraphs of the syllabus in the Magnolia case, supra, wherein this court said:

"5. In construing statutes the courts should not presume that the Legislature has intended to unjustly discriminate between different cases of the same kind, but should adopt that construction which will insure the uniform operation of the statute.

"6. In construing ambiguous tax statutes the court should adopt that interpretation which lays the burden .

of the tax uniformly on all those similarly situated."

To so construe the statute in question is to make its application uniform on all taxpayers in identical positions or those similarly situated. See the Magnolia case, supra, and Love v. Silverthorn, 187 Okl. 144, 101 P.2d 254, 129 A.L.R. 676, and cases cited therein. Not to so construe it would constitute our approval of an unjust and illegal discrimination. Okla.Const. Art. X, Section 5, subject: Revenue and Taxation.

Affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and HALLEY, BLACKBIRD, JACKSON and IRWIN, JJ., concur.