Therin Edward MINIE and Diane Minie, husband and wife, Plaintiffs,

v.

Ray E. HUDSON and Corrine Dean, Appellants/Third Party Plaintiffs,

v.

CITY OF OKMULGEE and County of Okmulgee, Appellees/Third Party Defendants.

No. 86211.

Supreme Court of Oklahoma.

March 11, 1997.

Samuel J. Schiller, Tulsa, for Appellants/Third Party Plaintiffs.

C. Bart Fite, Muskogee, for Appellee/Third Party Defendant, City of Okmulgee.

Thomas C. Guilioli, Okmulgee, for Appellee/Third Party Defendant, County of Okmulgee.

KAUGER, Chief Justice:

Two questions are presented on certiorari: 1) whether the verbal notice of claim communicated to the City was valid under the Tort Claims Act; and 2) whether, once the County began to clear Hudson's drainage system, it had a duty to complete the job with due care. We find that: 1) the clear and mandatory language of 51 O.S.Supp.1992 § 156(D)[1] requires that notice of a claim against a political subdivision be presented in writing; and 2) the County had a duty to complete its work, undertaken pursuant to contract, with reasonable care and in a non-negligent manner.

## FACTS

The appellant, Ray E. Hudson (Hudson/land owner), owns property in Okmulgee, Oklahoma, a portion of which contains a drainage channel to which Hudson asserts the appellee, County of Okmulgee (County), holds an easement.[2] Hudson alleges that in the fall of 1992, the appellee, City of Okmulgee (City), began dumping raw sewage from its lines creating a lake on his property in which floating condoms, sanitary napkins and human fecal matter accumulated. Because the drainage channel was blocked by trees, brush, dirt, and foreign materials, drainage from the property was inadequate and flooding problems increased.

After repeated requests for assistance to correct the flooding problems,[3] on October

1. Title 51 O.S.Supp.1992 § 156(D) provides:
   "A claim against a political subdivision shall be in writing and filed with the office of the clerk of the governing body."
   The writing requirement of subsection D first appeared in an amendment effective October 1, 1985.

2. Although it is undisputed that an easement in favor of the County was filed of record in Okmulgee County on October 20, 1971, the County insists that there are no records indicating that it ever accepted the easement. *Henry v. Ionic Petroleum Co.*, 391 P.2d 792, 794 (Okla.1964); *Board of County Com'rs v. Brown*, 287 P.2d 917–18 (Okla.1955) [Two requirements for a public easement are: 1) an intention by the owner to dedicate the land to public use; and 2) an effective acceptance by the public of the dedication.]. The determination that the County may have liability does not rest upon whether the ditch in

question is part of a public easement. See, discussion, pp. 8–19, infra.

3. The transcript from the hearing on the request for temporary relief held on June 21, 1994, testimony of County Commissioner Roger Ballenger, provides in pertinent part:
   "A  ... As far as the work that was done, might I address that?
   Q  Yes, sir, please do.
   A  When I first came in office Mr. Hudson approached me several times about the problems in the area and I went out and looked at those. I talked to other people in the area. We looked at the situation during rains. At the request of Mr. Hudson and others, a statement from me to them was that I would do whatever I could to help find a way to ease the problem in that area ..."

19, 1992, the County entered into agreements with Hudson and other property owners to clear the drainage ditch.[4] The County made arrangements for some of the work to be done by inmates from the Taft Correctional Center. However, there were county personnel, tools and equipment on site when the work was undertaken. Although the agreement signed by Hudson and the County provided for the removal of trees, brush, and dirt from the drainage channel,[5] the project was abandoned before the ditch was completely cleared.[6] After a particularly heavy rainstorm caused more sewage to be dumped on his property, Hudson gave verbal notice [7] of his claim to Davis Harris, the City Manager, in September of 1993.[8] Although Hudson believes that he sent a written notification to the City at the same time that he filed a written claim with the County, no such writ-

4. The agreement entered between the County Commissioner, Roger Ballenger and Hudson provides in pertinent part:

> "AGREEMENT FOR WORK ON PRIVATE PROPERTY
> *Okmulgee* COUNTY
> This agreement made and entered into the *19* day of *Oct, 1992,* by and between *Okmulgee* County, District No. *2,* hereinafter called the 'County' and *Ray Hudson* of *920 N. Kern,* hereinafter called the 'landowner'.
> The 'Landowner' agrees to permit employees of the 'County', with necessary tools and equipment, to enter upon his land located *(use legal & grid locations)* County, Oklahoma for the purpose of *clearing trees & brush & dirt from drainage ditch.*
> The 'County' agrees to repair fences and/or other damages caused by the above action.
> Whereas, the above described action is mutually beneficial, there will be no compensation payable to either party, nor is it agreed or implied that there is to be any perpetual maintenance obligations incurred by the 'County'.
> The 'County' agrees to perform the above described action within *120* days of this agreement and that this agreement will terminate upon the completion of the described action...."

Before undertaking the work on private property, Ballenger sought the advice of the District Attorney pursuant to 19 O.S.1991 § 215.5. The District Attorney informed Ballenger it would be permissible to proceed with the work.

5. Id.

6. Transcript of Proceedings, June 21, 1994, testimony of County Commissioner Roger Ballenger, provides in pertinent part at pp. 27–29:

> "... We got the prison crew in on Monday. They had their own supervisor. They had no tools and equipment. I asked the District Attorney's Office if it was proper and in line for us to furnish them what tools and equipment they needed and a County vehicle to dispose of the wood. Obviously we couldn't just leave it piled up there with them no way to move it. So, in the spirit of good will for the community, we followed through with that plan. That's why there was County personnel and vehicles there, not because we were assuming responsibility for the ditch, but because we needed to get across private property with this prison crew. And we had a crew of approximately ten prisoners and two County hands to assist them. We could not possibly have done that with County personnel and continue to do the rest of our job that we're required by law to do.
> So, we were trying to help that neighborhood out by making a way for this prison crew to do what they could. By the time they got the trees, the major trees the neighborhood and private property owners couldn't handle, they were out of time and due to go to their next project.
> So, that's where we stopped. And the wording of—and I didn't write the permits, one of my foremen did. They wrote to remove trees, brush and dirt, with the understanding that they would start with the big trees. If they had a lot of time left and things went well, they would go ahead and do some more things in the area. But when their time expired, they went to the next project and we did nothing further as far as the County, after the prison crew left...."

7. Defendants' and Third Party Plaintiffs' Response to Third Party Defendant, City of Okmulgee's Motion to Dismiss provides in pertinent part at p. 3:

> "... Mr. Hudson believes that Notice of Tort Claim was filed with the City of Okmulgee at or about the same time that Notice of Tort Claim was filed with the County of Okmulgee on September 17, 1993. However, no notice to the City of Okmulgee has been found to date...."

8. Hudson's affidavit, executed on July 31, 1995, provides in pertinent part:

> "... In September, 1993, I had a telephone conversation with Davis Harris, the Okmulgee City Manager. I told him raw sewage was being dumped on my property. I told him exactly where this was occurring. I also told him I expected the City to clean up the sewage, to do what was necessary to keep any further sewage from dumping on my property, and that I would hold the City responsible for damage to my property...."

ten notice has been located. Hudson's written notice of claim to the County was sent on September 17, 1993.[9]

On May 10, 1994, Hudson filed a third-party petition[10] against the City and the County seeking damages and injunctive relief on nuisance and negligence theories. The City filed a motion to dismiss based on Hudson's failure to comply with the notice provisions of the Governmental Tort Claims Act, 51 O.S.1991 § 151 et seq. At the conclusion of the hearing on Hudson's request for temporary relief against the County, the trial court ruled in the County's favor finding that: 1) the County did not construct the drainage system; 2) the County had not accepted the easement; and 3) the County had no responsibility to maintain the drainage ditch. Based on these findings, the County filed a motion to dismiss. The trial court sustained the City's motion and it granted summary judgment to the County. Hudson's motion to reconsider was denied and he appealed. In an opinion designated for publication, the Court of Civil Appeals, Division I, affirmed the trial court on October 1, 1996. We granted certiorari on December 20, 1996.

**9.** Hudson's response to the City's motion to dismiss provides in pertinent part at p. 3:

"... Mr. Hudson believes that a Notice of Tort Claim was filed with the City of Okmulgee at about the same time that a Notice of Tort Claim was filed with the County of Okmulgee on September 17, 1993. However, no notice to the City of Okmulgee has been found to date...."

The County does not contend that Hudson's notice was untimely. It appears that notice would be timely to the County on any theory. Hudson had 270 days from September 17, 1993, to file his claim. 51 O.S.Supp.1995 § 157(A) and (B). The claim was filed on May 10, 1994—235 days after his original written notice was given. See also, 51 O.S.Supp.1992 § 156(A) and (B).

**10.** The third-party petition grew out of a quiet title/adverse possession action filed by Therin Edward Minie and Diane Minie (Minie) on March 31, 1993, against Hudson. Hudson counterclaimed against Minie. After Hudson sued the City and the County, Minie and Hudson dismissed their claims against each other.

**11.** Title 51 O.S.Supp.1978 § 156(B) provides:

## I.

## PURSUANT TO THE CLEAR MANDATORY LANGUAGE OF 51 O.S.SUPP. 1992 § 156(D), ONLY A WRITTEN CLAIM WILL INVOKE THE PROTECTIONS OF THE GOVERNMENTAL TORT CLAIMS ACT, 51 O.S.1991 § 151 ET SEQ.

■ Hudson asserts that a verbal communication to the City may be sufficient notice under the Governmental Tort Claims Act. He relies upon: 1) our decision in *Duesterhaus v. City of Edmond*, 634 P.2d 720, 722 (Okla.1981) in which we specifically held that written notice was not mandatory to satisfy the notice provisions of 51 O.S.Supp.1978 § 156(B);[11] and 2) upon the line of cases in which this Court has consistently held that substantial compliance with the notice provisions of the Tort Claims Act is sufficient when the governmental entity is not prejudiced, and the information provided satisfies the purposes of the statutory notice provisions.[12] The City argues that *Duesterhaus* and the cases in which the doctrine of substantial compliance developed have no application to the current version of 51 O.S.Supp. 1992 § 156(D) which provides that a claim against a political subdivision "shall be in writing."[13]

"A claim against a political subdivision or employee shall be forever barred unless notice thereof is filed with the clerk of the governing body of the political subdivision within one hundred twenty (120) days after the loss occurs."

**12.** *Calvert v. Tulsa Public Schools*, 67 O.B.J. 2849 (1996), 932 P.2d 1087 (Okla.1996); *Mansell v. City of Lawton*, 901 P.2d 826, 830 (Okla.1995); *Juvenal v. Okeene Public Schools*, 878 P.2d 1026, 1029 (Okla.1994); *Walker v. City of Moore*, 836 P.2d 1289–90 (Okla.1992); *Lucas v. Independent Pub. School Dist. No. 35*, 674 P.2d 1131–31 (Okla.1983); *Conway v. Ohio Casualty Ins. Co.*, 669 P.2d 766–67 (Okla.1983); *Graves v. Rose*, 663 P.2d 733–34 (Okla.1983); *Reirdon v. Wilburton Bd. of Educ.*, 611 P.2d 239, 241 (Okla.1980).

**13.** Title 51 O.S.Supp.1992 § 156(D), see note 1, supra. Although the words "shall" and "must" are generally mandatory when used in statutes, they can be construed to mean "may." *Texaco, Inc. v. City of Oklahoma City*, 619 P.2d 869, 871 (Okla.1980).

■ *Duesterhaus* was promulgated in 1981. The language relied upon by the City first appeared in § 156 in an amendment effective October 1, 1985. The issue of whether written notice is necessary to invoke the protections of the Tort Claims Act has not been presented to this Court since § 156(D) was amended. The statute now provides:

"A claim against a political subdivision shall be in writing and filed with the office of the clerk of the governing body."

It is presumed that the Legislature has expressed its intent in a statute and that it intended what it so expressed.[14] The determination of legislative intent controls judicial statutory interpretation;[15] however, it is unnecessary to apply rules of construction to discern legislative intent if the will is clearly expressed.[16]

■ The statutory language leaves no doubt that the Legislature intended that claims against a political subdivision be submitted in writing. The statute specifically provides that a claim "shall be in writing." The use of "shall" by the Legislature is normally considered as a legislative mandate equivalent to the term "must", requiring interpretation as a command.[17] Further, when the Legislature amends a statute whose meaning has been settled by case law, it has expressed its intent to alter the law.[18] Before the Legislature amended § 156(D), its effect had been judicially determined in

*Duesterhaus* holding that a written claim was unnecessary to substantially comply with the notice provisions of the Tort Claims Act. The Legislative intent to change the law is expressed in the amendment to § 156(D). We find that pursuant to the clear mandatory language of 51 O.S.Supp.1992 § 156(D), only a written claim is sufficient to invoke the protections of the Governmental Tort Claims Act, 51 O.S.1991 § 151 et seq. Hudson's verbal communication to the City does not substantially comply with this requirement.

## II.

### ACTIONS IN IMPROVING THE DRAINAGE DITCH WERE OPERATIONAL AND IMPOSED A DUTY TO COMPLETE THE WORK, UNDERTAKEN PURSUANT TO CONTRACT, WITH REASONABLE CARE AND IN A NON–NEGLIGENT MANNER.

Hudson contends that although the County may have been under no duty to clear the drainage ditch on his property, once it undertook the job pursuant to its written contract, it was required to complete it with due care. Although the County concedes that it attempted to assist landowners with recurring water problems by obtaining agreements to work on private property,[19] it argues that it was under no duty to make any improvements and that its acts are shielded by 51 O.S.Supp.1994 § 155(5)[20] exempting discre-

---

14. *Fuller v. Odom,* 741 P.2d 449, 453 (Okla. 1987); *Darnell v. Chrysler Corp.,* 687 P.2d 132, 134 (Okla.1984); *Independent School Dist. No. 89 v. Oklahoma Fed'n of Teachers,* 612 P.2d 719, 723 (Okla.1980).

15. *Copeland v. Stone,* 842 P.2d 754, 756 (Okla. 1992); *Fuller v. Odom,* see note 14, supra; *Matter of Phillips Petroleum Co.,* 652 P.2d 283, 285 (Okla.1982).

16. *Copeland v. Stone,* see note 15, supra; *Fuller v. Odom,* see note 14, supra.

17. *State ex rel. Macy v. Freeman,* 814 P.2d 147, 153 (Okla.1991); *Forest Oil Corp. v. Corporation Com'n,* 807 P.2d 774, 787 (Okla.1990).

18. *Copeland v. Stone,* see note 15, supra; *Tom P. McDermott, Inc. v. Bennett,* 395 P.2d 566, 569–70 (Okla.1964); *County Bd. v. Muskogee Indus. Finance Corp.,* 357 P.2d 224, 227–28 (Okla.1960).

19. Answer brief of County, p. 5.

20. Title 51 O.S.Supp.1994 § 155 provides in pertinent part:

"The state or a political subdivision shall not be liable if a loss or claim results from:
... (5) Performance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees ..."

The County also makes passing reference to the exclusion for court ordered or Department of Corrections approved work release programs. However, the agreement for clearing of the drainage ditch was executed by the County and the landowners [see note 4, supra]; and it is undisputed that County employees and equipment were involved in the attempted clearing of the drainage ditch on Hudson's property [see note 6, supra, testimony of County Commissioner Roger Ballenger].

tionary functions from the purview of the Tort Claims Act.

■ We agree with the County that it was under no duty to make public improvements to the landowners' drainage system.[21] Under § 155(5), a political subdivision is not liable for a loss or claim which results from the failure to perform some act or service which is in the discretion of the municipality or its employees.[22] Because the County is a political subdivision covered by the Tort Claims Act, this exemption applies.[23] Nevertheless, once the County made the decision to clear the drainage ditch its acts were no longer discretionary. Rather, they were ministerial or operational acts not falling within the discretionary exemption of the Tort Claims Act.[24] The County did not undertake the work on Hudson's property as a volunteer. Rather, the contract, executed between the County and the landowners,[25] specifically provides that: 1) it is undertaken "for the purpose of clearing trees & brush & dirt from the drainage ditch;" 2) no compensation will be payable to either party because the contract is "mutually beneficial;" and 3) the work will be performed "within 120 days" of the agreement. Once the decision was made and the work was begun on the drainage system pursuant to the contract, the County was required to use due care in completing the task.[26] We find that the County's actions in improving the drainage ditch were operational imposing a duty to complete the work, undertaken pursuant to contract, with reasonable care and in a non-negligent manner.

## CONCLUSION

This Court may not, through the use of statutory construction, change, modify or amend the expressed intent of the Legislature.[27] The clear and mandatory language of 51 O.S.Supp.1992 § 156(D)[28] requires that notice of a claim to a political subdivision must be in writing. Hudson has been unable to present any evidence of a writing. Therefore, his notice to the City did not substantially comply with the notice provisions of the Governmental Tort Claims Act, 51 O.S.1991 § 151 et seq.

To support an actionable claim for negligence, a plaintiff must establish the concurrent existence of: a duty on the part of the defendant to protect the plaintiff from injury; a failure of the defendant to perform that duty; and an injury to the plaintiff resulting from the failure of the defendant.[29] We express no opinion on whether Hudson may recover against the County. However, because reasonable people could differ[30] on

---

21. *Morain v. City of Norman,* 863 P.2d 1246, 1250 (Okla.1993); *Robinson v. City of Bartlesville,* 700 P.2d 1013, 1015 (Okla.1985).

22. Title 51 O.S.Supp.1994 § 155(5), see note 20, supra; *Morain v. City of Norman,* see note 21, supra.

23. Title 51 O.S.Supp.1994 § 152 provides in pertinent part:
   "As used in the Governmental Tort Claims Act: ... 8. 'Political subdivision' means:
   ... c. a county ... "

24. *Morain v. City of Norman,* see note 21, supra; *Robinson v. City of Bartlesville,* see note 21, supra; *City of Ada v. Canoy,* 198 Okla. 206, 177 P.2d 89, 92 (1947).

25. See note 4, supra.

26. *Morain v. City of Norman,* see note 21, supra; *Robinson v. City of Bartlesville,* see note 21, supra.

27. *Copeland v. Stone,* see note 15 at 756, *supra; Anschutz Corp. v. Sanders,* 734 P.2d 1290, 1292

(Okla.1987); *McVicker v. Board of County Com'rs,* 442 P.2d 297, 302 (Okla.1968).

28. Title 51 O.S.Supp.1992 § 156(D), see note 1, supra.

29. *Krokowski v. Henderson Nat'l Corp.,* 917 P.2d 8, 11 (Okla.1996); *Grover v. Superior Welding, Inc.,* 893 P.2d 500, 502 (Okla.1995); *Wofford v. Eastern State Hosp.,* 795 P.2d 516, 518 (Okla. 1990).

30. Even when basic facts are undisputed, motions for summary judgment should be denied, if under the evidence, reasonable persons might reach different inferences or conclusions from the undisputed facts. Summary judgement is proper only when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Krokowski v. Henderson Nat'l Corp.,* see note 29, supra; *Carris v. John R. Thomas & Associates,* 896 P.2d 522, 530 (Okla.1995); *Roach v. Atlas Life Ins. Co.,* 769 P.2d 158, 163 (Okla.1989).

whether the work done on the drainage ditch pursuant to a contract between the parties was completed with due care, the cause is remanded for proceedings consistent with this opinion.

**COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT REVERSED; CAUSE REMANDED.**

SUMMERS, V.C.J., and HODGES, LAVENDER, OPALA and WATT, JJ., concur.

SIMMS, J., concurs in Part I, dissents from Part II.

HARGRAVE and ALMA WILSON, JJ., concur in part and dissent in part.