MEDICINE PARK TELEPHONE CO. v. STATE EX REL. OKLAHOMA CORPORATION COMM.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:MEDICINE PARK TELEPHONE CO. v. STATE EX REL. OKLAHOMA CORPORATION COMM.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 MEDICINE PARK TELEPHONE CO. v. STATE EX REL. OKLAHOMA CORPORATION COMM.
2019 OK 22
441 P.3d 122
Case Number: 116193
Decided: 04/16/2019
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2019 OK 22, 441 P.3d 122

 

MEDICINE PARK TELEPHONE COMPANY, Appellant,
v.
STATE OF OKLAHOMA EX REL. OKLAHOMA CORPORATION COMMISSION, Appellee.

APPEAL FROM OKLAHOMA CORPORATION COMMISSION CAUSE NO. 
PUD 201600457

Dana Murphy, Chairman; Todd Hiett, Vice Chairman; and Bob Anthony, Commissioner.

¶0 Medicine Park Telephone Company appeals the Oklahoma Corporation Commission's denial of its application for reimbursement from the Oklahoma Universal Services Fund for reasonable investments and expenses incurred in providing primary universal service to its customers. We find that the Commission's wholesale denial of the reimbursement of any of the requested funds is in error and vacate the Commission's ruling and remand with directions.

ORDER OF THE OKLAHOMA CORPORATION COMMISSION REVERSED
AND REMANDED WITH INSTRUCTIONS.

William H. Hoch, Melanie Wilson Rughani, Crowe & Dunlevy, P.C., Oklahoma City, Oklahoma, and Ron Commingdeer, Kendall W. Parrish, Ron Commingdeer & Associates, Oklahoma City, Oklahoma, for Appellant.

Michele Craig, Deputy General Counsel, Oklahoma Corporation Commission, Oklahoma City, Oklahoma, for Appellee.

Nancy M. Thompson, Oklahoma City, Oklahoma, for Sprint Communications Company, L.P., Sprint Spectrum L.P. and Virgin Mobile USA, L.P.

Jack G. Clark, Jr., Clark, Wood & Patten, P.C., Oklahoma City, Oklahoma, for Verizon.

WINCHESTER, J.,

¶1 The issue before this Court is whether the Oklahoma Corporation Commission ("the Commission") erroneously withheld funding to be provided to Medicine Park Telephone Company ("Medicine Park") pursuant to the provisions of the Oklahoma Universal Service Fund ("OUSF"), 17 O.S.Supp.2016, § 139.106. For the reasons set forth herein, we find that Medicine Park is entitled to the requested funding.

STATUTORY BACKGROUND

¶2 In 1996, the U.S. Congress passed the federal Telecommunications Act, 47 U.S.C. §§ 151 et seq., in part, to promote a policy of universal service that would provide telecommunication services to consumers all over the country, including "those in rural, insular, and high cost areas." The Act seeks to provide access to services that are "reasonably comparable to those services provided in urban areas and that are available at rates that are reasonably comparable to rates charged for similar services in urban areas." 47 U.S.C. § 254(b)(3). The Oklahoma Legislature followed suit with its own, complementary Oklahoma Telecommunications Act of 1997 (the "Act"). 17 O.S.2011 and Supp.2016, §§ 139.101 et seq.

¶3 Under the state and federal Acts, certain telecommunications providers known as "carriers of last resort" are required to provide, without discrimination, telephone service to any customer requesting it. See 47 U.S.C. § 201; 17 O.S.2011 and Supp.2016, §§ 101 et seq. In addition, the provider must offer the requested services at reasonable and affordable rates in line with those offered in more urban areas even if serving such customers would not be economically sustainable. See 47 U.S.C. § 202; 47 U.S.C. § 254(b)(3), (g), (i). The purpose of the legislation was to provide affordable and quality primary universal services to all despite the challenges of its accessibility.

¶4 In an effort to defray the costs of delivering phone service in rural, more remote areas, the federal and state Acts each established a fund to help support eligible service providers. Within Oklahoma's Act, the Legislature created the OUSF to help pay for reasonable investments and expenses incurred by "eligible local exchange telecommunications service providers" in providing primary universal services to customers in rural and high-cost areas "at rates that are reasonable and affordable." See 17 O.S.Supp.2016, § 139.106 (A), (B), and (G).

¶5 The OUSF generally provides that an eligible provider "may request funding from the OUSF as necessary to maintain rates for primary universal services that are reasonable and affordable." 17 O.S.Supp.2016, § 139.106 (G). The OUSF is funded by a charge paid by certain telecommunications carriers that have revenues as defined in Section 139.107. See 17 O.S.Supp.2016, §§ 139.106 (D) and 139.107.[1]

¶6 The Commission's rules governing the process for obtaining funding from the OUSF are set out in OAC 165:59, Part 9 and are overseen by the Administrator of the Commission's Public Utilities Division ("PUD"). Under the rules, upon receipt of a request for OUSF funding, the OUSF Administrator reviews the request and, if appropriate, reimburses the provider consistent with the Act. OAC 165:59-7-1(d) and OAC 165:59-3-62(g). Requests for Subsection (G)'s "as necessary" distributions are evaluated through a detailed study and analysis of the "costs of providing primary universal services" as well as potential revenue. 17 O.S.Supp.2016, § 139.106 (H). The review process for claims submitted under Subsection (G) can be time-consuming and tedious, often resulting in a significant delay in receipt of any funds.[2] As a result, the Legislature provided a mechanism within the Act that would allow providers in the rural areas quicker access to mandatory payments in certain, limited circumstances. See 17 O.S.Supp.2016, § 139.106(K).

 

¶7 Subsection (K)(1)(a) mandates that, if "a Federal Communications Commission order, rule or policy" has the effect of "decreas[ing] the federal universal service fund revenues of an eligible local exchange telecommunications service provider," that provider "shall recover the decreases in revenues from the OUSF." 17 O.S.Supp.2016, § 139.106 (K)(1)(a). Similarly, Subsection (K)(1)(b) provides that, if changes required by "federal or state regulatory rules, orders, or policies" reduce the revenues or increase the costs to an eligible local exchange telecommunications service provider, then that provider "shall recover the revenue reductions or cost increases from the OUSF." 17 O.S.Supp.2016, § 139.106 (K)(1)(b). Under Subsection (K), distributions from the OUSF "shall not be conditioned upon any rate case or earnings investigation by the Commission," but, instead, should be paid in an amount equal to the increase in costs or reduction in revenues. 17 O.S.Supp.2016, § 139.106 (K)(2).

¶8 The Commissioners are free to approve or reject any determination by the OUSF Administrator. Under the rules, if no one objects to the Administrator's determination, an order approving the funding request is issued by the Commission. OAC 165:59-3-62(j). If, however, a party is not satisfied with the OUSF Administrator's determination, the party may file a request for reconsideration by the Commission and the matter is set for hearing. OAC 165:59-3-62(h) and (i). The Commission is the ultimate arbiter of the issues. See, Cameron v. Corporation Com 'n, 1966 OK 75, ¶29, 414 P.2d 266, 272 (on appeal from an oil and gas spacing order, the Court noted that regardless of whatever weight the Commission may attach to an examiner's report, "the Commission is the final arbiter of the issues"). See also, State ex rel. Cartwright v. Southwestern Bell Telephone Co., 1983 OK 40, ¶32, 662 P.2d 675, 681 (quoting Cameron).

¶9 The Commission, by a 2-1 vote, denied reimbursement. Commissioner Dana Murphy, dissenting in each of these companion cases, has stated that although she may not agree with the need for the fund, she feels she must uphold the Legislature's will as long as the fund exists. She dissented to the denial of Medicine Park's request stating that because she didn't believe the majority decision "comports with the Oklahoma Legislature's intent to, in part, provide support to small, rural carriers who have experienced increases in costs as a result of changes required by governmental acts and with the Legislative policy to preserve and advance universal services."

¶10 In 2014, the Commission denied a request for OUSF funding from Dobson Telephone Company. See Dobson Telephone Co. v. State ex rel. Okla. Corporation Comm., 2017 OK CIV APP 16, 392 P.3d 295. Dobson sought reimbursement, under Subsection (K)1)(b) of the OUSF, for costs incurred to relocate its telephone facilities as required by the city of Oklahoma City for a street-widening project. Because the request had been issued by the city, and not the county commission or ODOT, the Commission narrowly interpreted the statute and concluded that the Fund was not authorized to pay for such relocation costs.

¶11 The Court of Civil Appeals found that the Commission's interpretation of the statutory language defeats the purpose of the Fund and is contra to the legislative intent to defray increased costs incurred by eligible telecommunications service providers resulting from government action, no matter the originating government entity. Dobson Telephone Co. v. State ex rel. Okla. Corporation Comm., 2017 OK CIV APP 16, ¶21, 392 P.3d 295, 305. The Commission's Order was vacated and the matter was remanded for further proceedings consistent with the Court of Civil Appeals opinion. Dobson Telephone Co. v. State ex rel. Okla. Corporation Comm., 2017 OK CIV APP 16, ¶23, 392 P.3d 295, 305. This Court approved the case for publication.

FACTUAL BACKGROUND

¶12 The FCC created a program called Local Switching Support (LSS), which was paid from the federal Universal Service Fund. LSS was available to rural incumbent carriers serving fewer than 50,000 lines and was designed to help such carriers recoup some of the high fixed costs of providing telephone service, and particularly local switching service, in areas with fewer customers. On January 1, 2012, the FCC eliminated this LSS support. See USF/ICC Transformation Order (FCC 11-161). The FCC did not, however, eliminate the legal requirement that Medicine Park and other carriers of last resort continue to provide such services.

¶13 The OUSF mandates that, "in the event of a federal communications commission order, rule or policy, the effect of which is to decrease the federal universal service fund revenues of an eligible local exchange telecommunications service provider, the decrease in revenue shall be recovered from the OUSF." 17 O.S.Supp.2016, §106.139(K)(1)(a). After its federal LSS support was eliminated by FCC order, Medicine Park submitted an application for reimbursement to recover this loss of revenue under Section 106.139 (K)(1)(a); specifically, $102,648 for 2014 and $8,554 per month beginning January 2015.

¶14 The PUD Administrator conducted a thorough review of Medicine Park's application. He ultimately recommended approval of $102,629 for the year 2014 and $8,552.42 per month thereafter, having disallowed $419.00 of the requested lump sum and $1.58 from the requested monthly recurring amount due to a lack of supporting documentation. Various other telecommunications companies, including Sprint, Virgin Mobile, and Verizon (collectively hereafter "Sprint") filed a request for reconsideration, requesting denial of any reimbursement.

¶15 An evidentiary hearing before an ALJ followed and Medicine Park presented testimony from John Harris, Managing Partner of Telcom Advisory Group. Harris testified that his group prepared and reviewed relevant information such as cost studies, accounting records and other confidential, financial materials, all of which support the figures requested in Medicine Park's application for reimbursement. Further, the PUD Administrator, who had reviewed all documents on site, was made available for further questions and cross-examination. After considering all the facts and evidence presented, the ALJ denied Sprint's requests for reconsideration and recommended approval of Medicine Park's application, adopting the amounts as recommended by the Administrator.

¶16 Despite the ALJ's recommendation, the Commission issued an order denying Medicine Park's request for reimbursement. The Commission concluded that there was no dispute that Medicine Park was an eligible service provider qualified for reimbursement, or that it had suffered a reduction in federal universal service fund revenues as a result of the FCC order to eliminate the LSS. Nevertheless, the Commission ruled that Medicine Park was not entitled to any funding because the company had made the confidential and proprietary information supporting its application available for onsite review, rather than filing it with the Commission as a matter of public record.

¶17 Additionally, the Commission would not issue the reimbursement because Medicine Park "failed to prove, and no determination was made as to, whether Medicine Park's rates for primary universal services are reasonable and affordable," or "that the requested funding is necessary to enable Medicine Park to provide primary universal services at rates that are reasonable and affordable." Medicine Park appealed, requesting that the Commission's denial be reversed. We retained the matter and made it a companion to Case Nos. 115,453, 116,194, 116,214, 116,215, 116,421 and 116,422.

STANDARD OF REVIEW

¶18 This Court's review of decisions of the Commission is governed by the Oklahoma Constitution, article 9, § 20, which states as follows, in relevant part:

The Supreme Court's review of appealable orders of the Corporation Commission shall be judicial only, and in all appeals involving an asserted violation of any right of the parties under the Constitution of the United States or the Constitution of the State of Oklahoma, the Court shall exercise its own independent judgment as to both the law and the facts. In all other appeals from orders of the Corporation Commission the review by the Supreme Court shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence.

Okla. Const. art. 9, § 20.

¶19 The issue in this appeal concerns the Commission's legal interpretation of the OUSF statute and the alleged arbitrary and capricious denial of funding in violation of the Oklahoma Constitution. Constitutional implications as well as statutory interpretation dictate our de novo review of this case. Cox Oklahoma Telecom, LLC v. State ex rel. Oklahoma Corp. Comm'n, 2007 OK 55, ¶9, n.17, 164 P.3d 150, 156. Under the de novo standard of review, the Court has plenary, independent and non-deferential authority to determine whether the trial tribunal erred in its legal rulings. Cox Oklahoma Telecom, LLC v. State ex rel. Oklahoma Corp. Comm'n, 2007 OK 55, ¶9, n.16, 164 P.3d 150, 156; Neil Acquisition v. Wingrod Investment Corp., 1996 OK 125, ¶5, 932 P.2d 1100, 1103; Fanning v. Brown, 2004 OK 7, ¶8, 85 P.3d 841, 845.

¶20 This Court has found that the Commission's power "must be exercised only within the confines of its limited jurisdiction as provided by the Oklahoma Constitution" and state statute.[3] Pub. Serv. Co. v. State ex rel. Corp. Comm'n, 1997 OK 145, ¶23, 948 P.2d 713, 717. The Commission's "power to regulate is not unfettered." Pub. Serv. Co. v. State ex rel. Corp. Comm'n, 1996 OK 43, ¶21, 918 P.2d 733, 738.

DISCUSSION

¶21 Under the OUSF, eligible telecommunications providers serving fewer than 75,000 access lines are entitled to recover a decrease in revenues if such loss was caused by an FCC law. 17 O.S.Supp.2016, § 139.106(K).[4] It is undisputed that Medicine Park is an eligible provider under the Act. It is further undisputed that Medicine Park incurred a loss due to an FCC order. The Act mandates that where an FCC "order, rule or policy" has the effect of "decreas[ing] the federal universal service fund revenues of an eligible local exchange telecommunications service provider," such provider "shall recover the decreases in revenues from the OUSF." 17 O.S.Supp.2016, § 139.106(K)(1)(a). According to the Act's plain language, Medicine Park was entitled to receive reimbursement from the OUSF for its losses.

¶22 In support of the decision to deny Medicine Park's requested funding, the Commission's majority found that Medicine Park failed to produce sufficient evidence into the record. Despite acknowledging that its Administrator reviewed Medicine Park's application and conducted an on-site audit of Medicine Park's confidential financial information and documentation, the Commission ignored the Administrator's, as well as the ALJ's, finding that the documents provided by Medicine Park supported approval of the application. The Commission complained that it was limited to a mathematical review as many of the documents relied on by the Administrator were reviewed at Medicine Park's place of business and were either not made publicly available or had redacted information due to the confidential nature of the documents.

¶23 Medicine Park points out that up until the filing of these companion cases, the Commission had for years previously accepted the Administrator's review of confidential documents on site. Medicine Park maintains that they should not be penalized for the Commission's option not to take advantage of the opportunity to review, or even request to review, any of the confidentially-redacted documents. Medicine Park also cites cases supporting the proposition that long-standing actions or interpretations by an agency will not be idly cast aside without proper notice to affected parties. See, e.g., Oral Roberts Univ. v. Okla. Tax Comm'n, 1985 OK 97, ¶10, 714 P.2d 1013, 1015 (Courts are reluctant to overturn long standing construction where parties having great interest in such construction will be prejudiced by its change); Big Horn Coal Co. v. Temple, 793 F.2d 1165, 1169 (10th Cir. 1986)("Agencies are under an obligation to follow their own regulations, procedures, and precedents, or provide a rational explanation for their departures.").

¶24 The Administrator agreed with Medicine Park that the standard procedure followed by the Commission had always been for an applicant to fill out a Commission-approved form and make confidential information supporting its application available for the Commission to review on-site. He offered that this practice occurred not only in OUSF cases, but in numerous other Commission matters. We find the Commission was not entitled to discount Medicine Park's entire application merely because the documents the Administrator inspected and relied upon for his approval were not publicly filed of record before the Commission.

¶25 Medicine Park argues, and the Commission does not dispute, that the Commission's own rules and long-standing practices encouraged applicants to retain its confidential supporting materials on site, making such materials available for review and inspection as needed to support an application. In fact, Commission rule, OAC 165:59-3-72(d), specifically contemplates that "documentation not contained in the public record and not filed in the cause" may nevertheless be "relied upon by the OUSF Administrator in approving or denying an application." The Administrator disclosed that the Commission does not even have procedures in place that would allow it to handle "the responsibility or liability" of receiving such confidential materials.

¶26 Medicine Park filed an application, completed by using a Commission-issued form, which certified that as a result of an FCC order it experienced a loss of federal universal service fund revenues in the amount of $102,648 for 2014, and a projected monthly loss of $8554 going forward. The company presented the testimony of an independent witness who reviewed all of Medicine Park's pertinent, confidential materials, and who confirmed the validity of the requested amounts. The Administrator also reviewed the confidential materials and agreed that Medicine Park's application and documentation supported the relief requested, as nominally modified by the Administrator to a lump sum of $102,629 and $8552.42 monthly. The ALJ likewise agreed with both the independent witness and the Administrator that Medicine Park's application and offered materials supported approval thereof. Despite these findings, the Commission unexpectedly faulted Medicine Park for failing to publicly submit its confidential materials when documents of such a nature have not been typically filed with the Commission, nor required. Such flawed reasoning should not support a denial of the application herein.

¶27 Additionally, for the first time in these companion cases, the Commission interpreted Subsection (K) to impose a finding that Medicine Park's rates for primary universal services are reasonable and affordable pursuant to Subsection (B) and that the requested funding is necessary to maintain such reasonable and affordable rates. As mentioned, supra, § 139.106(K)(1)(a) plainly provides that where a provider incurs revenue losses due to an FCC law, order or policy, the provider SHALL recover the cost increase from the OUSF. See 17 O.S.Supp.2016, § 139.106(K)(1)(a). There is no mention of a condition that the applicant must prove that its rates are reasonable and affordable nor is there a requirement to find the reimbursement necessary to maintain such rates. To the contrary, § 139.106(K)(2) specifically states that an application's approval "shall not be conditioned upon any rate case or earnings investigation by the Commission." 17 O.S.Supp.2016, § 139.106(K)(1)(b). We are not inclined to add requirements to a statute that the Legislature chose not to impose. See Pentagon Acad., Inc. v. Indep. Sch. Dist. No. 1 of Tulsa Cty., 2003 OK 98, ¶19, 82 P.3d 587, 591 ("It is not the function of the courts to add new provisions which the legislature chose to withhold."); Minie v. Hudson, 1997 OK 26, ¶12, 934 P.2d 1082, 1087 ("This Court may not, through the use of statutory construction, change, modify or amend the expressed intent of the Legislature.").

¶28 Medicine Park contends that the Commission's complete denial of funding disregards the very purpose of the OUSF to ensure the availability of affordable telephone service to customers in rural and high cost areas where, absent the subsidies, their provision would be cost-prohibitive. We agree. The Commission ignores the plain language of the Act and attempts to impose new conditions not required by the Act, nor supportive of its purpose. Generally, applicants who filed under Subsection (K) could expect a quick reimbursement after approval by the Administrator that the application had followed the statutory process. The Commission's review of a Subsection (K) application would only arise if an outside entity filed a Request for Reconsideration of the Administrator's determination. Where no such reconsideration request is filed, the Administrator's approval would typically trigger a Commission order granting the applicant's request.

¶29 The Commission majority's aversion to the OUSF legislation has no bearing on the validity of an applicant's request for funding. We agree with the dissenting Commissioner that it is our duty to uphold legislation as it is enacted whether we agree with the policy behind such legislation or not. We agree with the findings of the Administrator and ALJ herein.

CONCLUSION

¶30 Although the Commission is not bound by the Administrator's recommendation, we find that the record reflects ample evidence with which to support the Administrator's determination. The Administrator, as well as the dissenting Commissioner, both agreed Medicine Park was entitled to reimbursement of the losses it incurred as a result of the FCC order decreasing federal funding. The Commission's wholesale denial of Medicine Park's request was in error. Accordingly, we vacate the order of the Commission and remand the cause for further proceedings consistent with this opinion.

ORDER OF THE OKLAHOMA CORPORATION COMMISSION VACATED AND REMANDED.

CONCUR: GURICH, C.J., KAUGER, WINCHESTER, EDMONDSON, and DARBY, JJ.

CONCURRING SPECIALLY (by separate writing): COMBS, J.

NOT PARTICIPATING: COLBERT, AND REIF, JJ.

FOOTNOTES

[1] Section 139.107 provides, in part:

A. The Oklahoma Lifeline Fund (OLF) and the Oklahoma Universal Service Fund (OUSF) shall be funded in a competitively neutral manner not inconsistent with federal law by all contributing providers. The funding from each contributing provider shall be based on the total intrastate retail Oklahoma Voice over Internet Protocol (VoIP) revenues and intrastate telecommunications revenues, from both regulated and unregulated services, of the contributing provider, hereinafter referred to as assessed revenues, as a percentage of all assessed revenues of the contributing providers, or such other assessment methodology not inconsistent with federal law. VoIP services shall be assessed only as provided for in the decision of the Federal Communications Commission, FCC 10-185, released November 5, 2010, or such other assessment methodology that is not inconsistent with federal law. The Commission may after notice and hearing modify the contribution methodology for the OUSF and OLF, provided the new methodology is not inconsistent with federal law.

B. The Corporation Commission shall establish the OLF assessment and the OUSF assessment at a level sufficient to recover costs of administration and payments for OUSF and OLF requests for funding as provided for in the Oklahoma Telecommunications Act of 1997. The administration of the OLF and OUSF shall be provided by the Public Utility Division of the Commission. The administrative function shall be headed by the Administrator as defined in Section 139.102 of this title. The Administrator shall be an independent evaluator. The Administrator may enter into contracts to assist with the administration of the OLF and OUSF.

17 O.S.Supp.2016, § 139.107. "Contributing provider" as that term is used in § 139.107 means "providers, including but not limited to providers of intrastate telecommunications, providers of intrastate telecommunications for a fee on a non-common-carrier basis, providers of wireless telephone service and providers of interconnected Voice over Internet Protocol (VoIP). Contributing providers shall contribute to the Oklahoma Universal Service Fund and Oklahoma Lifeline Fund." 17 O.S.Supp.2016, § 139.102 (8).

[2] Companion Case No. 115,453 involves a request for funds under Subsection (G) while the remaining six, companion cases, including the instant matter, involve requests brought under Subsection (K), set forth more fully herein. Those cases, also decided today, are Case Nos. 116,194, 116,214, 116,215, 116,421, and 116,422.

[3] The Oklahoma Constitution, art. 9, Section 18 specifies that the Commission has:

the power and authority and [is] charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses and preventing unjust discrimination and extortion by such companies; and to that end the Commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, and shall require them to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just, which said rates, charges, classifications, rules, regulations, and requirements, the Commission may, from time to time, alter or amend.

[4] Subsection (K) of the Act provides in toto:

K. 1. Each request for OUSF funding by an eligible ILEC serving less than seventy-five thousand access lines shall be premised upon the occurrence of one or more of the following:
a. in the event of a Federal Communications Commission order, rule or policy, the effect of which is to decrease the federal universal service fund revenues of an eligible local exchange telecommunications service provider, the eligible local exchange telecommunications service provider shall recover the decreases in revenues from the OUSF,
b. if, as a result of changes required by existing or future federal or state regulatory rules, orders, or policies or by federal or state law, an eligible local exchange telecommunications service provider experiences a reduction in revenues or an increase in costs, it shall recover the revenue reductions or cost increases from the OUSF, the recovered amounts being limited to the net reduction in revenues or cost increases, or
c. if, as a result of changes made as required by existing or future federal or state regulatory rules, orders, or policies or by federal or state law, an eligible local exchange telecommunications service provider experiences a reduction in costs, upon approval by the Commission, the provider shall reduce the level of OUSF funding it receives to a level sufficient to account for the reduction in costs.
2. The receipt of OUSF funds for any of the changes referred to in this subsection shall not be conditioned upon any rate case or earnings investigation by the Commission. The Commission shall, pursuant to subsection D of this section, approve the request for payment or adjustment of payment from the OUSF based on a comparison of the total annual revenues received from the sources affected by the changes described in paragraph 1 of this subsection by the requesting eligible local exchange telecommunications service provider during the most recent twelve (12) months preceding the request, and the reasonable calculation of total annual revenues or cost increases which will be experienced after the changes are implemented by the requesting eligible local exchange telecommunications service provider.

17 O.S.Supp.2016, § 139.106 (K).

 

 

COMBS, J., concurring: 

¶1 I concur in the majority opinion but write separately to emphasize the audacity of the Commission's blanket denial of Appellant's, Medicine Park Telephone Company, application. The legislature established a process by which a rural provider with limited resources is allowed to be reimbursed from the Oklahoma Universal Service Fund (OUSF) when the rural provider meets increased costs in fulfilling a mandate to provide reliable and affordable telephone service to Oklahomans in remote and underserved areas. The Commission's majority all but ignored the evidence presented ostensibly because of a fundamental disagreement with the Oklahoma Universal Service Fund.[1] This is nothing more than an attempt to further disenfranchise rural Oklahoma from basic telephone services.

FOOTNOTES

[1] Appellant's Brief in Chief at 1, January 29, 2018, states "Commissioner Bob Anthony has repeatedly spoken out against the law [Oklahoma Universal Service Fund], even going so far as to ask the Legislature, in writing, to repeal it." He stated the Fund is a bad program that should be repealed. Tr. at 30-31, June 26, 2014, Ok. Sup. Ct. Case No. 113,362. The Brief also states other members of the Commission have expressed their displeasure with the law. Commissioner Murphy, however, dissented against the denial of the request for OUSF funding.

 

 

 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2017 OK CIV APP 16, 392 P.3d 295, DOBSON TELEPHONE CO. v. STATE ex rel. OKLA. CORPORATION COMM.
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1997 OK 26, 934 P.2d 1082, 68 OBJ 909, Minie v. Hudson
Discussed
 1966 OK 75, 414 P.2d 266, CAMERON v. CORPORATION COMMISSION
Discussed
 2003 OK 98, 82 P.3d 587, THE PENTAGON ACADEMY, INC. v. INDEP. SCHOOL DIST. NO. 1 OF TULSA COUNTY
Discussed
 2004 OK 7, 85 P.3d 841, FANNING v. BROWN
Discussed
 1996 OK 43, 918 P.2d 733, 67 OBJ 1021, Public Service Co. of Oklahoma v. Oklahoma Corp. Comm.
Discussed
 2007 OK 55, 164 P.3d 150, COX OKLAHOMA TELECOM, LLC v. STATE ex rel. OKLAHOMA CORPORATION COMM'N.
Discussed at Length
 1996 OK 125, 932 P.2d 1100, 67 OBJ 3566, Neil Acquisition, L.L.C. v. Wingrod Investment Corp.
Discussed
 1997 OK 145, 948 P.2d 713, 68 OBJ 3885, PUBLIC SERVICE CO. v. STATE ex rel. CORPORATION COMM.
Discussed
 1983 OK 40, 662 P.2d 675, State ex rel. Cartwright v. Southwestern Bell Telephone Co.
Discussed
 1985 OK 97, 714 P.2d 1013, 56 OBJ 2777, Oral Roberts University v. Oklahoma Tax Com'n
Discussed
Title 17. Corporation Commission
 Cite
Name
Level

 17 O.S. 101, Repealed
Cited
 17 O.S. 139.101, Short Title
Cited
 17 O.S. 139.102, Definitions
Cited
 17 O.S. 139.106, Oklahoma Universal Service Fund (OUSF)
Discussed at Length
 17 O.S. 139.107, Administration of Funds
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA